## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | | |
|---|---|---|
| MARK VOELKER, | ) | |
| | ) | No. 9:18-CV-00172-DLC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **AMENDED COMPLAINT** |
| | ) | |
| BNSF RAILWAY COMPANY, | ) | **JURY TRIAL DEMANDED** |
| A Delaware corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Mark Voelker brings this Amended Complaint against Defendant BNSF Railway Company ("BNSF").  In support, Mr. Voelker states and alleges as follows:

### PARTIES

1.      Mr. Voelker resides in Whitefish, Montana.

2.      At all times material herein, BNSF was and is a Delaware corporation with a principal place of business in Fort Worth, Texas, organized and existing as a railroad carrier engaged in interstate commerce. BNSF maintains and operates a Montana Division Office located at 1555 Campus Way, Billings, MT 59102.   Process can be served on BNSF's

registered agent: Jeff Hedger, 2800 Central Avenue, Suite C, Billings, MT 59102-0000.

3.     At all times material herein, Mr. Voelker was an employee of BNSF or its predecessors in interest, having been hired in about September 1995, and working for BNSF until his termination on or around April 5, 2017.

## JURISDICTION & VENUE

4.     Count I of this action (below) arises under the whistleblower protection provisions of the Federal Rail Safety Act, codified at 49 U.S.C. § 20109.  On or about June 8, 2017, Mr. Voelker filed a complaint with the Secretary of Labor alleging that BNSF had violated one or more protections codified at 49 U.S.C. § 20109 when it took various adverse actions against him.  This complaint was timely as fewer than 180 days had passed since the adverse employment actions complained of.   More than 210 days have elapsed since Mr. Voelker filed that complaint, the Secretary of Labor has not issued a final decision, and the delay is not due to any bad faith on the part of Mr. Voelker.  This court has jurisdiction pursuant the 28 U.S.C. § 1331, as the matter arises under the laws of the United States.

5.     Count II of this action (below) arises under provisions contained in the Federal Employers' Liability Act ("FELA"), specifically at

45 U.S.C. § 60.  The count is timely as fewer than three years have passed since the day the cause of action accrued.  This court has jurisdiction pursuant the 28 U.S.C. § 1331, as the matter arises under the laws of the United States.

6.      Count III of this action (below) arises under Montana Statute § 39-2-703.  This count is timely as fewer than two years has passed since the day the cause of action accrued.  This court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), as the matter in controversy (excluding interests and costs) exceeds the sum or value of $75,000 and is between citizens of different states.  Furthermore, to the extent that Count III is so related to claims in Count I and II as to form part of the same course or controversy under Article III of the United States Constitution, this court has supplemental jurisdiction over the claim pursuant to 28 U.S.C. § 1367.

7.      Counts IV and V of this action (below) arise under the common law of the State of Montana.  These counts are timely as fewer than three years has passed since the day the causes of action accrued.  This court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), as the matter in controversy (excluding interests and costs) exceeds the sum or value of $75,000 and is between citizens of different states.  Furthermore, to the extent that Counts IV and V are so related to claims in Count I and II as to form part of the

same course or controversy under Article III of the United States Constitution, this court has supplemental jurisdiction over the claims pursuant to 28 U.S.C. § 1367.

8.     Venue is proper in the District of Montana pursuant to 28 U.S.C. § 1391.  A substantial part of the events, acts, and/or omissions giving rise to Mr. Voelker's claims in this action occurred in this judicial district.  Mr. Voelker resides in this judicial district.  And because BNSF conducts business in this judicial district and has sufficient contacts with this judicial district, this Court has personal jurisdiction over BNSF.

9.     Voelker filed his initial complaint in this matter on September 27, 2018.[1]  To the extent that this amended complaint asserts a claim that arises out of the conduct, transaction, or occurrence set out or attempted to be set out in the initial complaint, this amended complaint relates back to the date of that initial complaint by operation of Fed. R. Civ. P. 15(c)(1)(B)

10.     BNSF filed its answer to Voelker's initial complaint on November 27, 2018.[2]  Accordingly, this amended complaint is timely and proper pursuant to Fed. R. Civ. P. 15(a)(1)(B).

---

[1] ECF No. 1.
[2] ECF No. 4.

## FACTUAL BACKGROUND

11.     On or about July 31, 2015, a BNSF employee ("Z.W.") was injured during the course and scope of his employment with BNSF.  Z.W. claims that his injury was caused, in whole or in part, by a door latch on BNSF Locomotive 6867.  Defendant notified Z.W. that it would conduct an investigation into what it claimed was a dishonest report of a personal injury. This investigation occurred in September 2015, after which Defendant terminated Z.W.'s employment.[3]   Mr. Voelker was one of Z.W.'s union representatives at that investigation.

12.     In his role as a Union Representative for Z.W., Mr. Voelker continued to research the facts surrounding Z.W.'s injury, including Z.W.'s claim that he had been injured on the door handle of the locomotive.

13.     On or about October 27, 2015, Mr. Voelker inspected the door on the BNSF Locomotive 6867.  Mr. Voelker found the inside door handle and mechanism to be loose, with the screws that held the mechanism to the door coming loose.  Mr. Voelker requested that the crew report the door for repair.

---

[3] Z.W.'s injury and the subsequent termination of his employment by Defendant BNSF Railway Company is the subject matter of another case litigated in this district.  *Wooten v. BNSF Ry. Co.*, No. 9:16-CV-139-DLC.

14.     The following morning, Mr. Voelker reviewed a document known as a Locomotive Inquiry ("LINQ") for BNSF Locomotive 6867.

15.     On or about November 2, 2015, Plaintiff Mark Voelker provided certain documents, including but not limited to the LINQ, to the law firm representing Z.W. in his claim against the Defendant.[4]

16.     The Defendant became aware that Mr. Voelker had provided the documents to Z.W.'s legal counsel through the discovery process in the litigation of Z.W.'s claim.

17.     Sometime after learning that Mr. Voelker had provided the documents to Z.W.'s legal counsel, BNSF noticed an investigation into rule violations that Mr. Voelker had allegedly committed by providing the documents to Z.W.'s legal counsel.

18.     Defendant refused to, at the suggestion of a federal magistrate in the Z.W. matter, postpone the investigation into Mr. Voelker's alleged rule violation until after conclusion of the Z.W. matter.

19.     The investigation referred to in the previous paragraph was ultimately held in March 2017, after which Defendant terminated Mr. Voelker's employment.

---

[4] Z.W. is represented by the same firm representing Mr. Voelker in the current action.

20.     Mr. Voelker and/or his legal counsel are aware of other instances in which railroad employees have refused to speak to counsel for other employees who have suffered on the job injuries.  In at least one such occasion, the employee has refused to cooperate on the basis of her being aware of Defendant's termination of Mr. Voelker and not being able to financially survive Defendant taking the same action against her.

21.     After Defendant terminated his employment, Mr. Voelker applied for numerous jobs within the railroad industry in Montana and beyond.  While he was able to secure a temporary position outside of Montana, he has been consistently rejected from employment within the railroad industry in Montana despite being qualified for the positions.  On at least one occasion, the position remained posted and unfilled after Mr. Voelker's application was rejected.

22.     A federal court trial was held on the Z.W. matter in October and November 2018 in Missoula, Montana.  Defendant was represented by the same attorneys of record for Defendant in this case.

23.     As one of Z.W.'s union representatives, Mr. Voelker was in attendance for several days of Z.W.'s trial.  During the trial, counsel for Defendant made repeated references to Mr. Voelker, suggesting that he had manipulated evidence in the Z.W. matter.

24.     Following eleven days of trial, a federal jury unanimously found that Defendant had violated the whistleblower protections codified at 49 U.S.C. in its termination of Z.W.'s employment, and that such conduct had been malicious or in reckless disregard of Z.W.'s rights.

25.     Defendant BNSF utilizes a series of policies, including but not limited to PEPA, PMP, and ICP, which allow and/or encourage local management to violate State and Federal Law and/or BNSF policies by exercising discretion in application and enforcement of the railroad's various rules, regulations, and assessment of discipline.

26.     Defendant BNSF provides bonuses, merit raises, and/or promotions based in part on management-level employees PMP evaluations. Among the categories considered in the PMP evaluation is "Safety" which treats FRA-reportable, on-the-job injuries differently from non-reportable or off-duty injuries.   These policies therefore incentivize railroad officers to have injuries that occur be deemed "off duty" or not work related.

## Count I – Federal Rail Safety Act

27.     Each and every preceding paragraph is incorporated herein in its entirety by this reference.

28.     Mr. Voelker engaged in various incidents of protected activity, as statutorily defined by the whistleblower-protection provisions of the

Federal Rail Safety Act, codified at 49 U.S.C. § 20109.  These protected activities include, but are not necessarily limited to:

      a.     Reporting a hazardous safety condition regarding crew fatigue in a letter to the railroad's president, Carl Ice, in a written letter dated January 1, 2012;

      b.     Following up on that letter with an e-mail to Michael Shircliff and Ricco Montini on or about January 20, 2012;

      c.     Providing information regarding conduct which the employee reasonably believes constitutes a violation of any Federal law, rule, or regulation relating to railroad safety or security to a person who has the authority to investigate, discover, or terminate the misconduct by way of written communication with Dan Fransen on multiple occasions, including but not necessarily limited to July 28, 2015, and December 1, 2015;

      d.     Reporting a hazardous safety condition regarding improper repair, maintenance, and/or replacement of rail ties at railroad meetings, as well as in writing on or about December 1, 2015;

      e.     Reporting hazardous safety conditions on multiple occasions by raising the issue with various railroad officers, including but not necessarily limited to James Pino, directly or by way of

electronic mail, including but not limited to on or about February 18, 2016 and December 29, 2016;

   f. Reporting hazardous safety conditions on multiple occasions by completing Safety Issue Resolution Process ("SIRP") Reporting Forms, including but not necessarily limited to ones on or about October 6, 2016;

   g. Assisting in an investigation being conducted by OSHA regarding conduct which Mr. Voelker reasonably believed constituted a violation of any Federal law, rule, or regulation relating to railroad safety or security; and

   h. Other protected activity that may be uncovered, discovered, and/or addressed during discovery in this litigation.

29. BNSF, its officers, and/or its employees took actions to reprimand, suspend, or in some other way discriminate against Mr. Voelker, such as:

   a. On or about December 15, 2016, BNSF noticed an investigation into Mr. Voelker's conduct;

   b. On or about February 14, 2017, BNSF denied Mr. Voelker's request to postpone the investigation pending resolution of

an FELA/FRSA matter that was potentially implicated in the investigation;

      c.     On or about March 22, 2017, BNSF subjected Mr. Voelker to an on-property investigation;

      d.     On or about April 5, 2017, BNSF terminated Mr. Voelker's employment; and

      e.     On or around the time of each of these events, BNSF noted these things on Mr. Voelker's employment record, creating a potential for blacklisting.[5]

30.    At the time that BNSF took the above-described adverse actions, BNSF, its employees, and/or its officers were aware that Mr. Voelker had engaged in one or more instances of protected activity described in Paragraph 28, above.

31.    BNSF's decisions to reprimand, suspend, or discriminate in some other way against Mr. Voelker were due, in whole or in part, to his engagement in protected activity. That is evidenced by facts and circumstances including but not limited to:

---

[5] To the extent that any of the adverse actions referenced in the preceding paragraph occurred more than 180 days before the filing of this complaint, such adverse action provides background information for the adverse actions that are within the 180 day time frame. *See Miller v. Stifel, Nicolaus & Co.*, 812 F.Supp.2d 975, 986-87 (D.Minn. 2011) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)).

a.    There is close temporal proximity between the protected activities and the adverse action;

b.    BNSF's animus toward Mr. Voelker;

c.    BNSF's selective interpretation and enforcement of its policies, including the PEPA Policy, and its bonus and advancement policies, incentives, and disincentives for uniform treatment and application of policies (ICP, PMP, and others) for railroad officers

d.    BNSF's failure to enforce its own anti-discrimination and/or anti-retaliation policies in regard to management personnel; and

e.    Mr. Voelker's protected activity is "inextricably intertwined" with the adverse actions he was subjected to. *See Raye v. Pan Am Railways, Inc.*, 2013-FRS-00084 (OALJ June 25, 2014) at pg. 10 (holding that when protected activity and adverse action are inextricably intertwined, a presumptive inference of causation exists).

32.    As a result of the actions that BNSF and its decision-makers took to reprimand, suspend, or discriminate in some other way against Mr. Voelker, he has suffered damages that include but are not limited to:

a.    Loss of wages and benefits;

      b.      Negative remarks in his personnel files that may lead to blacklisting;

      c.      Emotional distress and loss of enjoyment of life; and

      d.      Other consequential damages including, but not limited to, litigation costs and reasonable attorney fees.

33.      Based on all of the allegations outlined above, Mr. Voelker demands and prays that the Court enter judgment in his favor and against Defendant BNSF Railway Company for all relief necessary to make Mr. Voelker whole, including but not limited to relief in the form of:

      a.      An award of back pay with interest appropriately compounded;

      b.      An award of benefits lost, including but not limited to credit for months of service that Mr. Voelker would have earned with the Railroad Retirement Board absent BNSF's unlawful termination of his employment;

      c.      An award for emotional distress, pain, suffering, and loss of enjoyment of life;

      d.      An award for any retraining tuition, and/or relocation costs;

e.      An award for any and all other compensatory damages, including litigation costs and reasonable attorneys' fees;

f.      An award for the negative tax consequences of compensatory damages;

g.      An award of any other costs, disbursements, and interest allowed by law and/or equity; and

h.      Relief requiring BNSF to:

i.      Immediately reinstate Mr. Voelker to his former position at the applicable rate, including all rights, seniority, and benefits—including applicable overtime—that Mr. Voelker would have enjoyed had BNSF never terminated his employment or, in the alternative, awarding Mr. Voelker front pay in an amount to be determined by the jury;

ii.      Permanently post notice of employees' rights under the FRSA in BNSF workplaces, as required by OSHA; and

iii.      Train its employees and officers on employees' rights under the FRSA.

34.    Mr. Voelker also prays for punitive damages not to exceed $250,000 under 49 U.S.C. § 20109(e)(3) to punish BNSF for its unlawful

activity and to deter BNSF from engaging in such unlawful activity in the future.

**COUNT II – SUPPRESSION OF VOLUNTARY INFORMATION**
**(45 U.S.C. § 60)**

35.    Each and every preceding paragraph is incorporated herein in its entirety by this reference.

36.    Defendant's use of vague and ambiguous terminology in its rules and policies, failure to advise employees that attorneys involved in litigation are "interested parties" entitled to receive information, abuse of designation of materials as "confidential," and investigation and termination of Mr. Voelker constitute a contract, rule, regulation, or device with the "purpose, intent, or effect of . . . prevent[ing] employees of any common carrier from furnishing voluntarily information to a person in interest as to the facts incident to the injury or death of any employee" and as such is void pursuant to the FELA.  *See* 45 U.S.C. § 60.

37.    As a result of Defendant's violation of 45 U.S.C. § 60, Mr. Voelker has suffered damages that include but are not limited to:

      a.    Loss of wages and benefits;

      b.    Negative remarks in his personnel files that may lead to blacklisting;

      c.    Emotional distress and loss of enjoyment of life; and

d.      Other consequential damages including, but not limited to, litigation costs and reasonable attorney fees.

38.     Based on all of the allegations outlined above, Mr. Voelker demands and prays that the Court enter judgment in his favor and against Defendant BNSF Railway Company for all relief necessary to make Mr. Voelker whole, including but not limited to relief in the form of:

a.      An award of back pay with interest appropriately compounded;

b.      An award of benefits lost, including but not limited to credit for months of service that Mr. Voelker would have earned with the Railroad Retirement Board absent BNSF's unlawful termination of his employment;

c.      An award for emotional distress, pain, suffering, and loss of enjoyment of life;

d.      An award for any retraining tuition, and/or relocation costs;

e.      An award for any and all other compensatory damages, including litigation costs and reasonable attorneys' fees;

f.      An award for the negative tax consequences of compensatory damages; and

g.    An award of any other costs, disbursements, and interest allowed by law and/or equity.

### COUNT III – VIOLATION OF MONTATA STATUTE 39-2-703

39.    Each and every preceding paragraph is incorporated herein in its entirety by this reference.

40.    Montana Statute 39-2-703 provides, in relevant part, that "a person or corporation operating a railway or railroad in this state is liable for all damages sustained by any employee of the person or corporation in consequence of the neglect of any other employee of the person or corporation or by the mismanagement of any other employee and in consequence of the willful wrongs, whether commission or omission, of any other employee of the person or corporation when the neglect, mismanagement, or wrongs are in any manner connected with the use and operation of a railway or railroad on or about which the employee is employed."

41.    At all times relevant to this Count, Voelker was an employee in of Defendant BNSF Railway Company within the State of Montana.

42.    Defendant BNSF Railway Company and/or one or more of its employees (including but not limited to employees located within the State of Montana) were negligent, engaged in mismanagement, or conducted

willful wrongs connected with the use and operation of a railroad on which Mr. Voelker was employed.  Examples of such neglect, mismanagement, or willful wrongs include, but are not limited, to the following:

a. BNSF negligently and/or willfully interfered in Voelker's role as a Union Representative for Z.W. by terminating him for providing information to Z.W.'s legal representatives;

b. BNSF negligently and/or willfully refused to abide by the Federal Magistrate's suggestion that the investigation into any alleged misconduct by Mr. Voelker be postponed until conclusion of the Z.W. matter;

c. Through its selective and inconsistent application of ambiguous rules in terminating Mr. Voelker, BNSF has caused other employees to be wary of cooperating with or assisting FELA and/or FRSA counsel prosecuting cases;

d. BNSF's policies (PEPA, PMP, ICP) incentivize local management to shift blame for FRA-reportable, on-the-job injuries to non-work-related incidents (such as occurred in the Z.W. matter) which in turn incentivizes management to reject evidence that suggests that injuries were sustained on-the-job;

e.     BNSF has failed to enforce its own anti-retaliation and anti-harassment policies with regard to management officers; and

f.     Other acts to be proven based on the evidence.

43.     To the extent that any investigation(s) referenced in any of the preceding paragraphs was conducted, the railroad mismanaged, failed to fully investigate and prepare a record prior to discipline, interfered with, and/or hindered a full and fair investigation and review of discipline.

44.     BNSF interfered with, obstructed, delayed, withheld, and/or destroyed evidence that should have been preserved and made part of the record regarding Voelker prior to discipline.

45.     Based on all of the allegations outlined above, Mr. Voelker demands and prays that the Court enter judgment in his favor and against Defendant BNSF Railway Company for all relief necessary to make Mr. Voelker whole, including but not limited to relief in the form of:

a.     An award of back pay with interest appropriately compounded;

b.     An award of benefits lost, including but not limited to credit for months of service that Mr. Voelker would have earned with the Railroad Retirement Board absent BNSF's unlawful termination of his employment;

   c. An award for emotional distress, pain, suffering, and loss of enjoyment of life;

   d. An award for any retraining tuition, and/or relocation costs;

   e. An award for any and all other compensatory damages, including litigation costs and reasonable attorneys' fees;

   f. An award for the negative tax consequences of compensatory damages; and

   g. An award of any other costs, disbursements, and interest allowed by law and/or equity.

## COUNT IV – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

46. Each and every preceding paragraph is incorporated herein in its entirety by this reference.

42. Defendant negligently inflicted emotional distress on Mr. Voelker during his employment and subsequent to his termination.

43. "A cause of action for negligent infliction of emotional distress will arise under circumstances where serious or severe emotional distress to the plaintiff was the reasonably foreseeable consequence of the defendant's negligent act or omission." *Sacco v. High Country Indep. Press, Inc.*, 271 Mont. 209, 232, 896 P.2d 411 (1995).

44.     In Montana, "severe or serious" emotional distress is defined by reference to the Restatement (Second) of Torts: "Emotional distress . . . includes all highly unpleasant mental reactions. . . . It is only where it is extreme that the liability arises. . . . The law intervenes only where the distress inflicted is so severe that no reasonable [person] could be expected to endure it.  The intensity and duration of the distress are factors to be considered in determining its severity."  *Sacco*, 271 Mont. at 234, 896 P.2d at 425.

45.     Beginning with the issuance of the notice of investigation and continuing through Z.W.'s trial (and likely to continue through litigation of the instant case), Defendant has disparaged Mr. Voelker by calling into question his motivations, actions, loyalty, and honesty in suggesting that he disclosed confidential information and/or manipulated evidence.   These allegations were made by the railroad with reckless disregard and are not based in truth.

46.     BNSF negligently and/or willfully refused to abide by the Federal Magistrate's suggestion that the investigation into any alleged misconduct by Mr. Voelker be postponed until conclusion of the Z.W. matter.

47.     Based on all of the allegations outlined above, Mr. Voelker demands and prays that the Court enter judgment in his favor and against Defendant BNSF Railway Company for all relief necessary to make Mr. Voelker whole, including but not limited to relief in the form of:

   a.     An award for emotional distress, pain, suffering, and loss of enjoyment of life;

   b.     An award for any and all other compensatory damages, including litigation costs and reasonable attorneys' fees;

   c.     An award for the negative tax consequences of compensatory damages; and

   d.     An award of any other costs, disbursements, and interest allowed by law and/or equity.

## COUNT V – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

48.     Each and every preceding paragraph is incorporated herein in its entirety by this reference.

49.     Defendant intentionally inflicted emotional distress on Mr. Voelker both during his employment and after by exposing him to behavior beyond what a reasonable person would be expected to endure.

50.     "[A]n independent cause of action for intentional infliction of emotional distress will arise under circumstances where serious or sever

emotional distress to the plaintiff was the reasonably foreseeable consequence of the defendant's intentional act or omission." *Sacco*, 271 Mont. at 237, 896 P.2d 422.

51.    In assessing an intentional infliction of emotional distress claim, the court applies the same requirement as relevant to Count IV that the emotional distress be serious or severe, utilizing the same definitions.

52.    "[A]n award of punitive damages is the proper method of addressing the culpabilitiy nad intentional nature of the defendant's conduct in an intentional infliction of emotional distress case." *Sacco*, 271 Mont. at 233, 896 P.2d at 425; *see also Miller v. Watkins*, 200 Mont. 455, 468, 653 P.2d 126, 132 (1982) ("Punitive or exemplary damages are allowed where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, for the sake of example and by way of punishing the defendant. Exemplary damages shall be used when the defendant clearly shows that he is deserving of such special treatment and punishment.").

53.    Beginning with the issuance of the notice of investigation and continuing through Z.W.'s trial (and likely to continue through litigation of the instant case), Defendant has disparaged Mr. Voelker by calling into question his motivations, actions, loyalty, and honesty in suggesting that he

disclosed confidential information and/or manipulated evidence. A reasonable person would be unable to endure this behavior.

54.   BNSF negligently and/or willfully refused to abide by the Federal Magistrate's suggestion that the investigation into any alleged misconduct by Mr. Voelker be postponed until conclusion of the Z.W. matter

55.   Based on all of the allegations outlined above, Mr. Voelker demands and prays that the Court enter judgment in his favor and against Defendant BNSF Railway Company for all relief necessary to make Mr. Voelker whole, including but not limited to relief in the form of:

    a.   An award for emotional distress, pain, suffering, and loss of enjoyment of life;

    b.   An award for punitive damages;

    c.   An award for any and all other compensatory damages, including litigation costs and reasonable attorneys' fees;

    d.   An award for the negative tax consequences of compensatory damages; and

    e.   An award of any other costs, disbursements, and interest allowed by law and/or equity.

## PRAYER FOR RELIEF

56.     Each and every preceding paragraph is incorporated herein in its entirety by this reference.

57.     Based on the above, Voelker demands and prays that the Court enter judgment in his favor and against Defendant BNSF on all claims pleaded herein and award him all relief necessary to make him whole, including:

a.     An award of back pay with interest appropriately compounded;

b.     An award of benefits lost, including but not limited to credit for months of service that Mr. Voelker would have earned with the Railroad Retirement Board absent BNSF's unlawful termination of his employment;

c.     An award for emotional distress, pain, suffering, and loss of enjoyment of life;

d.     An award for punitive damages;

e.     An award for any and all other compensatory damages, including litigation costs and reasonable attorneys' fees;

f.     An award for the negative tax consequences of compensatory damages; and

g.     An award of any other damages, costs, disbursements, and interest allowed by law and/or equity.

## DEMAND FOR TRIAL BY JURY

58.     Mr. Voelker hereby makes and files a written demand for a trial by jury in this action on all issues so triable under the appropriate governing authority.

Dated: December 12, 2018          Respectfully Submitted,

By: */s/William G. Jungbauer*
William G. Jungbauer, #3223
Yaeger & Jungbauer Barristers, PLC
4601 Weston Woods Way
Saint Paul, MN 55127
T: (651) 288-9500
F: (651) 288-0227
E: wjungbauer@yjblaw.com

*Attorneys for Plaintiff Mark Voelker*