IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION



FILED
DEC 19 2019
Clerk, U.S District Court
District Of Montana
Missoula

| | |
|---|---|
| MARK VOELKER,<br><br>            Plaintiff,<br><br>vs.<br><br>BNSF RAILWAY COMPANY, a<br>Delaware corporation,<br><br>            Defendant. | CV 18–172–M–DLC<br><br>ORDER |

Before the Court is Defendant BNSF Railway Company's Motion to Quash Notice of Deposition and for Protective Order concerning Apex Depositions. (Doc. 37.) A hearing on the motion is unnecessary. The Court finds that Plaintiff Mark Voelker has adequate alternative means to procure the discoverable information he seeks. Therefore, Voelker is not entitled to depose senior management-level executives who lack personal knowledge of the events central to this litigation. Thus, it grants BNSF's motion.

### BACKGROUND

Voelker worked for BNSF for nearly forty years, starting in 1979. (Doc. 16.) He was terminated in the spring of 2017 after sharing information with his current attorneys, who were at that time representing another former BNSF

-1-

employee in a case regarding that employee's termination by BNSF. Voelker alleges that his termination was unlawful under the Federal Rail Safety Act ("FRSA"), 49 U.S.C. § 20109, because it was in response to him making internal reports and external complaints regarding safety. Voelker claims he suffered damages relating to his discipline and termination that are compensable under the Federal Employers' Liability Act ("FELA") and Montana law.

Pursuant to the scheduling order filed February 4, 2019, discovery closes on February 28, 2020, but the parties may agree to an extension of the discovery deadline without Court intervention. (Doc. 20.) It is unclear how many depositions have been taken of individuals with first-hand knowledge of the events giving rise to this litigation. At issue here is Voelker's notice of deposition regarding the following seven executives:

> Dave Freeman, Executive Vice President, Operations
> Judy Carter, Vice President, Compliance and Audit
> Eric Hegi, Assistant Vice President, Claims
> Matt Igoe, Vice President, Transportation
> Rob Karov, Vice President, Labor Relations
> Mark Schulze, Vice President, Safety
> Peter Dutton, Vice President, Information Technology, BNSF Logistics[1]

---

[1] Dutton does not work for BNSF Railway Company but for BNSF Logistics, a different subsidiary of the same parent company, Burlington Northern Santa Fe Corporation. This is evidenced by the Securities and Exchange Commission's organizational chart that Voelker cites in his brief. (Doc. 40 at 26.) However, it appears that Voelker has misread the chart, understanding the Defendant here to be the parent company when it is in fact a separate subsidiary of the same parent company. *See* Securities and Exchange Commission, Burlington Northern Sante Fe Corp.: Subsidiaries and Associated Companies, https://www.sec.gov/Archives/edgar/data/934612/000119312504023301/dex211.htm.

## LEGAL STANDARD

"The Court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). In *Brewer v. BNSF Railway Co.*, No CV 14-65-GF-BMM-JCL (Oct. 16, 2015), this Court adopted the framework applied by many other district courts regarding "apex depositions," or depositions of high-level executives with minimal direct involvement in the events giving rise to a case. Apex depositions present a substantial risk of "annoyance, embarrassment, oppression, or undue burden or expense," and they are unlikely to elicit relevant testimony, even under the broad standard of relevance that applies for purposes of discovery. Fed. R. Civ. P 26(b)(1), (c)(1).

As the Northern District of California has noted, "when a party seeks the deposition of a high-level executive (a so-called 'apex' deposition), courts have 'observed that such discovery creates tremendous potential for abuse or harassment.'" *Apple Inc. v. Samsung Elecs. Co.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012) (quoting *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004)). "In determining whether to allow an apex deposition, courts consider (1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." *Id.* (quoting *In re Google Litig.*, No. C 08-03172

RMW (PSG), 2011 WL 4985279 (N.D. Cal. Oct. 19, 2011)).[2] Nonetheless, the "party seeking to prevent a deposition carries a heavy burden to show why discovery should be denied," and "it is very unusual for a court to prohibit the taking of a deposition altogether absent extraordinary circumstances." *Id.* (internal quotation marks and citation omitted).

## DISCUSSION

The Court finds that BNSF has met its "heavy burden" of showing why the depositions should not be taken absent further factual development. At this stage of litigation, it appears that the high-level executives noticed for deposition are without personal knowledge of Voelker's employment and termination, and Voelker has many other avenues for discovery of the information sought. If, after conducting depositions and completing discovery, Voelker learns that the individuals have unique or personal knowledge of discoverable information, he may try again.

BNSF has submitted declarations of each of the executives noticed for deposition (save for Peter Dutton, who works for a different company). These affidavits demonstrate: (1) that the noticed individuals do not have personal, direct

---

[2] Citing *Robinett v. Opus Bank*, No. C12-1755MJP (W.D. Wash. Oct. 30, 2013), BNSF suggests that these two considerations are elements rather than factors and that the party seeking deposition bears the burden of establishing both elements. The Court disagrees with BNSF's formulation of the standard. As it did in *Brewer*, it applies the more flexible standard set forth in *Apple Inc.*, which appropriately allocates the burden to the party seeking a protective order and affords the court the discretion generally available in pretrial matters.

-4-

knowledge of Voelker's termination; and (2) that other, less intrusive methods of discovery remain open to Voelker. The Court considers each of the individuals in turn.

### A. Dave Freeman, Executive Vice President, Operations

Because Voelker has alleged that Freeman had personal knowledge of Voelker's advocacy for employee safety, Freeman's notice of deposition presents the closest issue in this Order. Voelker argues that Freeman was part of the PEPA ("Policy for Employee Performance Accountability") Review Board that dismissed Voelker and that "Freeman had previously displayed animosity towards Voelker following a series of safety complaints submitted by Voelker." (Doc. 40 at 17.) However, the PEPA Review Board meeting at issue took place approximately two months after Voelker was fired, and it therefore cannot have made the determination to terminate his employment. (Doc. 43-6.) Further, Freeman has declared that he had no knowledge of Voelker's safety complaints prior to his termination and that he is not aware of ever having met Voelker.

Voelker's attempt to depose Freeman on an uncorroborated suspicion amounts to nothing more than a fishing expedition. In *Brewer*, Judge Johnston determined that the plaintiff was entitled to a highly circumscribed 30-minute deposition of BNSF's CEO when it was agreed that the CEO attended a meeting in Havre, Montana, during which the plaintiff publicly raised a safety complaint.

Here, in contrast, the Court can think of no questions Voelker can ask Freeman that are not foreclosed by Freeman's declaration. And there is nothing outside of Voelker's complaint and briefs suggesting that Freeman had any awareness of Voelker prior to his termination. Even Voelker's own allegations are thin, as they mention an interaction with Freeman at an undesignated place and time, during which Freeman made a "sour face" and unspecified "disparaging remarks," allegedly in response to a letter Voelker had written to a different executive.

Thus, the Court grants BNSF's motion as to Freeman at this time. The Court will reconsider this issue if there is any evidence of Freeman's involvement in Voelker's termination once Voelker has received materials and conducted depositions of the individuals who admittedly made the determination to terminate Voelker. As for Freeman's knowledge of the PEPA Review process generally, the Court trusts that BNSF will make available an appropriate 30(b)(6) deponent.

### B. Rob Karov, Vice President, Labor Relations

Voelker argues that "Karov is subject to deposition because the best available information suggest[s] he ha[d] involvement on the PEPA Review Board that made the ultimate decision to terminate Voelker" and "was . . . identified as a contact for questions . . . regarding the PEPA policy." (Doc. 40 at at 19.) In response, Karov declares that, even assuming that presence at the meeting would be meaningful, he did not attend the PEPA Board meeting at issue. (Doc. 43-4.)

And, absent any indication that Karov played a role in terminating Voelker, there is no reason that his general understanding of the PEPA policy would be relevant to this litigation. Any number of other BNSF employees ought to be able to explain the policy and how it is construed.

### C. Mike Schulze, Vice President, Safety

The case for deposing Schulze is as weak as that for deposing Karov, and it fails for similar reasons. Schulze is unsure of whether he attended the relevant PEPA Board meeting; if he did, he has no "recollection of any discussion of the matter involving Mr. Voelker." (Doc. 43-5.) Given that the PEPA Board meeting occurred on June 29, 2017, well after Voelker's termination on April 5, 2017, the Court would not authorize the deposition even if Schulze had attended. Voelker's theory—that the executives at that meeting could have reversed his prior termination—does not have any bearing on the relevant issue of why he was in fact terminated.

### D. Matt Igoe, Vice President, Transportation

Similar to Karov and Schulze, Igoe has declared that he did not attend the PEPA meeting on June 29, 2017. Further, Igoe had a different position at the time of Voelker's termination, and he "would not have been involved in the discipline process of any scheduled transportation employees in the Montana Division."

(Doc. 43-7.) There is no indication that Igoe has unique or personal knowledge relevant to this matter, even under the broad standard applicable during discovery.

### E. Judy Carter, Vice President, Compliance and Audit

Voelker seeks to depose Carter on the basis of her presence at the June 2017 PEPA Board meeting and her listing as "the sole designated contact for guidance, interpretation, and implementation of the Confidential Information Policy." (Doc. 40 at 22.) As discussed previously, the Court is unconvinced that attendance at the PEPA Board meeting suggests unique or personal knowledge regarding Voelker's termination. Moreover, Carter's declaration indicates that she has no reason to believe that her knowledge of BNSF policies, including those regarding confidentiality, ultimately bore on the determination to terminate Voelker. (Doc. 43-11.) The Court therefore concludes that a deposition of Carter would not lead to discovery of relevant information that cannot be easily discovered from more accessible sources.

### F. Eric Hegi, Assistant Vice President, Claims

Voelker contends that he is entitled to depose Hegi because "he is likely the individual who has the most knowledge regarding the PEPA Review Board and PEPA Policy with BNSF." (Doc. 40 at 25.) However, even considering Voelker's claim brought under Montana law, this case is not a challenge to BNSF's PEPA policy or structure. This is a case about why Voelker was terminated from his job

with BNSF, and the individuals with unique and/or personal knowledge regarding that termination are not likely to be those who regularly attend meetings designed to ensure nationwide enforcement of BNSF employment and safety policies. There is no need for "intricate knowledge of the PEPA system and PEPA Review Board." (Doc. 40 at 26.) Moreover, Hegi has declared that he did not attend the June 2017 meeting and had no involvement in Voelker's termination. (Doc. 43-3.) The Court concludes that, absent further information suggesting Hegi's personal involvement, there is no reason to believe that a deposition of Hegi would be fruitful.

**G. Peter Dutton, Vice President, Information Technology, BNSF Logistics**

Finally, Voelker seeks to depose Dutton, whom Voelker argues is "likely [to] ha[ve] knowledge of the information sought by Voelker concerning . . . databases and litigation holds used by BNSF." (Doc. 40.) BNSF argues that it has no control over Dutton and cannot make him available for deposition. The Court agrees with BNSF. *See supra* page 2 n.1. However, it also concludes that Voelker is entitled to the information he seeks. That is, provided that Voelker submits a proper notice, BNSF will need to locate a 30(b)(6) deponent who can answer Voelker's questions regarding the storage of relevant information in BNSF's electronic databases. The Court agrees with Voelker that he is entitled to

understand how BNSF compiles, stores, and produces electronic information that is or may be discoverable in this case.

Accordingly, IT IS ORDERED that Defendant BNSF Railway Co.'s Motion to Quash Notice of Deposition and for Protective Order concerning Apex Depositions (Doc. 37) is GRANTED.

IT IS FURTHER ORDERED that, as outlined above, Plaintiff Mark Voelker is not entitled to depose the following individuals at this time: Dave Freeman, Judy Carter, Eric Hegi, Matt Igoe, Rob Karov, Mark Schulze, and Peter Dutton. In the event that Voelker discovers new, additional information showing that any individual has direct and/or unique knowledge of the events surrounding Voelker's termination, he may either: (1) stipulate to such deposition with BNSF; or (2) if a stipulation cannot be reached, file a motion with the Court seeking an exception to this Order.

DATED this 19th day of December, 2019.

Dana L. Christensen, Chief Judge
United States District Court