IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| MARK VOELKER, | CV 18–172–M–DLC |
| Plaintiff, | |
| vs. | ORDER |
| BNSF RAILWAY COMPANY, a Delaware corporation, | |
| Defendant. | |

Before the Court are Plaintiff Mark Voelker's ("Mr. Voelker") first (Doc. 56) and second (Doc. 58) motions to compel discovery.  The Court finds a hearing on the motions unnecessary.  For the reasons stated herein, Mr. Voelker's first motion to compel discovery (Doc. 56) is granted in part and denied in part and the Court will order an *in camera* review of the documents identified in his second motion to compel (Doc. 58).

## BACKGROUND

Mr. Voelker worked for BNSF Railway Company ("BNSF") from April 1997 until his termination on April 5, 2017.  (Docs. 16 at 2.)  Mr. Voelker has filed suit against BNSF asserting claims for: (1) violation of the Federal Rail Safety Act, codified at 49 U.S.C. § 20109(b); (2) violation of 45 U.S.C. § 60; (3) violation of

Montana Code Annotated § 39-2-703; (4) negligent infliction of emotional distress; and (5) intentional infliction of emotional distress.  (Doc. 8.)  During this litigation, Mr. Voelker has served various discovery requests on BNSF for which he now moves to compel responses.  (Doc. 57.)  In addition, Mr. Voelker seeks to compel production of several emails identified in a privilege log generated by BNSF and produced in redacted form.  (Doc. 59.)

In adjudicating Mr. Voelker's motions to compel (Docs. 56; 58), the Court pays particular attention to his Federal Rail Safety Act claim.  *See Jones v. BNSF Ry. Co.*, 2019 WL 6728429, *3 (D. Mont. 2019) (CV 18–146–M–DLC); *Brewer v. BNSF Ry. Co.*, 2016 WL 11695454, *2 (D. Mont. 2016) (CV 14–65–GF–BMM–JTJ).  Specifically, Mr. Voelker alleges that he was subjected to adverse action by BNSF because of his engagement in a variety of protected activities.  (Doc. 8 at 8–15.)  In general, the Federal Rail Safety Act protects covered employees from retaliation on the basis that they engaged in certain protected activities.  49 U.S.C. § 20109(a), (b).

As previously noted by this Court, "'[a] claim for unlawful retaliation under the FRSA has two stages: the prima facie stage, *see* 49 U.S.C. § 42121(b)(2)(B)(i)–(iii); 29 C.F.R. § 1982.104(e), and the substantive stage, *see* 49 U.S.C. § 42121(b)(2)(B)(iii)–(iv); 29 C.F.R. § 1982.109(a)–(b).'  *Rookaird v. BNSF Ry.*

*Co.*, 908 F.3d 451, 459 (9th Cir. 2018).  Each stage requires application of a

burden-shifting framework."  *Jones*, 2019 WL 6728429 at * 1.

> At the prima facie stage, Mr. Volker must establish that
>
> (i) he engaged in a protected activity (or . . . was perceived to have engaged or to be about to engage in protected activity);
>
> (ii) BNSF knew or suspected that he engaged in the protected activity (or . . . perceived the employee to have engaged or to be about to engage in protected activity);
>
> (iii) he suffered an adverse action; and
>
> (iv) The circumstances were sufficient to raise the inference that the protected activity (or perception thereof) was a contributing factor in the adverse action.

29 C.F.R. § 1982.104.  If successful, BNSF can defeat his prima facie case by

"demonstrat[ing], by clear and convincing evidence, that [it] would have taken the

same unfavorable personnel action in the absence of [the protected activity]."  49

U.S.C. § 42121(b)(2)(B)(ii).

At the substantive stage, Mr. Voelker must prove by a preponderance of the

evidence that his engagement in a protected activity was a contributing factor in

bringing about the unfavorable personnel action of which he complains.  *Rookaird*,

908 F.3d at 460 (internal citations omitted).  "Then—like at the prima facie

stage—[BNSF] can defeat the retaliation claim 'if [it] demonstrates by clear and

convincing evidence that [it] would have taken the same unfavorable personnel

action in the absence of [the protected activity]."  *Id.*

3

As this Court has previously found, the "contributing factor" requirement of both stages of an FRSA claim is particularly important to the resolution of discovery disputes. *Jones*, 2019 WL 6728429 at *2. Contributing factors include "any factor, which alone or in connection with other factors, tends to affect in any way the outcome of the decision." *Rookaird*, 908 F.3d at 461 (quoting *Gunderson v. BNSF Ry. Co.*, 850 F.3d 962, 969 (8th Cir. 2017)). Critically, Mr. Voelker can successfully establish the existence of a contributing factor through circumstantial evidence. *See Id.* at 461–62; *see also Araujo v. N.J. Transit Rail Ops., Inc.*, 708 F.3d 152, 160–61 (3d Cir. 2013). Given this legal framework, the Court is mindful that broad sweeping discovery is often necessary to establish an FRSA claim and is hesitant to render the claim unsuccessful by virtue of its undue constraint of the discovery process.

## LEGAL STANDARD

This Court enjoys "wide latitude in controlling discovery" and resolving disputes that arise during the discovery process. *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002); *see also Childress v. Darby Lumber, Inc.*, 357 F.3d 1000, 1009 (9th Cir. 2004). The scope of discovery extends to all:

> nonprivileged matter that is relevant to any party's claim or defense
> and proportional to the needs of the case, considering the importance
> of the issues at stake in the action, the amount in controversy, the
> parties' relative access to relevant information, the parties' resources,
> the importance of the discovery in resolving the issues, and whether

4

the burden or expense of the proposed discovery outweighs its likely
benefit.

Fed. R. Civ. P. 26(b)(1).  Relevancy, for the purposes of discovery, is
construed broadly and encompasses "any matter that bears on, or that
reasonably could lead to other matter that could bear on, any issue that is or
may be in the case."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351
(1978).

This Court has previously construed relevancy as any information that
"might reasonably assist a party in evaluating the case, preparing for trial, or
facilitating settlement."  *Cintron v. Title Fin. Corp.*, 2018 WL 6605901, 1
(D. Mont. 2018) (CV 17–108–M–DLC).  Indeed, "[t]he Court takes an
expansive view regarding relevance for purposes of discovery. At risk of
stating the obvious, subject matter or documents may be relevant . . . for
purposes of discovery, but will not meet the more stringent standard of
relevance to constitute admissible evidence at trial."  *Id.*

A party may move to compel disclosure when it is unable to access
information through its discovery requests.  Fed. R. Civ. P. 37(a)(3)(B).
"The moving party bears the burden of showing that the discovery sought is
'relevant' as defined above, and the party resisting discovery bears the
burden of showing that nondisclosure is appropriate."  *Jones*, 2019 WL
6728429 at *3.

5

**DISCUSSION**

This Order addresses both of Mr. Voelker's pending discovery motions (Docs. 56; 58) in turn, keeping in mind the requirements of a successful FRSA claim and the guiding discovery standards.

## I.     Mr. Voelker's First Motion to Compel (Doc. 56).

In his first motion, Mr. Voelker seeks to compel responses to requests related to: (1) comparators; (2) EPTS, TSS, and LINQS; (3) BNSF's management compensation and bonus structures; (4) BNSF's PEPA policy and PEPA review board; and (5) BNSF's former General Manger of the Montana Division, Daniel Fransen.  (Doc. 57 at 9–19, 23–30.)  Additionally, Mr. Voelker seeks to compel responses to several miscellaneous discovery requests modeled after those approved of by the Court in *Jones* and the designation of proper deponents for several topics identified in his 30(b)(6) notice.  (*Id.* at 19–22, 31–35.)

### A.     Comparators.

Mr. Voelker's motion to compel discovery on comparators stems from two requests.  (Doc. 57 at 9–11.)  First, his fifth interrogatory states:

> Please identify by name, address, position of employment, date of incident, and document, every circumstance in which a BNSF employee has disseminated a LINQ report or LINQ information similar to that produced at YJB-VOELKER (WB) – 57-63 to person(s) or entities outside of BNSF from 2015 to present, and state whether or not the employee was disciplined for the action.

(Doc. 57-2 at 6.)  BNSF responded by stating:

6

BNSF objects to this request on the grounds that it is overly broad and unduly burdensome in that it would require BNSF to inquire of all BNSF's 42,000+ employees if he/she had ever disseminated a LINQ report or LINQ information to any person or entity outside of BNSF for the time period 2015 to present. BNSF also objects to this request on the grounds that it is not relevant or proportional to the needs the needs (sic) of the case. The relevant issue in this case is not whether the LINQ report is or has ever been provided to a person or entity outside of BNSF for valid business purposes or as otherwise authorized, but whether such an action was taken without prior authorization.

(*Id.* at 6–7.)  Second, his fourteenth request for production states:

Please provide copies of each and every BNSF audit or analysis of BNSF waiver, alternative handling, leniency, discipline or no discipline for each employee notified of possible rule violation for each and every rule that Plaintiff was charged of violating relating to this litigation from 2012 to present.

(*Id.* at 28–29.)  BNSF's response states:

BNSF objects to this request as overly broad, unduly burdensome, irrelevant, and not proportional to the needs of the case as it seeks materials not relevant to any party's claim or defense and seeks information on employee discipline for a seven-year time period without limit to a particular division, terminal location, or decision maker. Appropriate comparators would be employees who are similarly situated in all relevant respects to Plaintiffs circumstances. Employees are similarly situated when they dealt with the same supervisor, were subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances. Moreover, the request seeks information regarding alternative handling, a process that Plaintiff was ineligible for at the time he was charged with rules violations as alleged in his complaint. See notices of investigation previously produced at BNSF1008. See also objects to this request as seeking information protected by the attorney-client privilege and work product doctrine. Pursuant to Rule 26(b)(5), F.R.Civ.P., BNSF asserts as privileged and confidential all documents, records, or other communications by and between in-

house counsel and any management official either requesting or
seeking legal advice or containing the mental impressions of a party.

Finally, BNSF objects to the extent this request calls for confidential
employee discipline information for persons not a party to this
litigation. The identities of these individuals is protected pursuant to
their constitutional right to privacy.

Upon request, Defendant is willing to meet and confer regarding its
response to this document demand to limit it to a reasonable search.

(*Id.* at 29–30.)  Besides objections, BNSF has apparently not otherwise responded

to these requests.  The Court finds the issue of comparator data old and tired (as

should parties' counsel).  This discovery issue has been litigated in similar cases

time and time again.  *See Jones*, 2019 WL 6728429, *4 (collecting prior cases).

The Court agrees, as it has in the past, that "the plaintiff is entitled to much of what

he requests."  *Id.*

Mr. Voelker argues that his fifth interrogatory is relevant to the issue of

whether he has been subjected to disparate treatment by BNSF in relation to other

employees who have disseminated LINQ information outside of BNSF.  (Doc. 57

at 9).  If so, Mr. Voelker argues such disparate treatment would establish

circumstantial evidence of intentional retaliation in support of his FRSA claim.

(*Id.*)  In addition to its objections, BNSF asserts it simply cannot ascertain whether

or to what extent thousands of BNSF employees across the country have

disseminated LINQ reports or information to entities outside of BNSF.  (Doc. 62 at

8–9.)

8

The Court finds that Mr. Voelker's fifth interrogatory is relevant, proportional, and seeks information he is entitled to receive.  Consistent with this Court's prior rulings, it additionally finds that Mr. Voelker's fifth interrogatory is appropriately limited in time.  *See Jones*, 2019 WL 6728429 at *4.  Because the events of which Mr. Voelker complains allegedly arose in 2015, the Court finds that comparator data from 2015 to the present is a sufficiently narrow timeframe. (*See generally* Doc. 8.)  To the extent, BNSF argues it cannot uncover much of what Mr. Voelker seeks in this interrogatory at issue, the Court trusts it will undertake a good-faith effort to acquire any and all responsive information.  The Court is also mindful that BNSF cannot provide information it does not have. Accordingly, the Court grants Mr. Voelker's motion to compel on this issue.  **It is ordered that BNSF shall respond to Mr. Voelker's fifth interrogatory.**

With respect to Mr. Voelker's fourteenth request for production, he argues that the existence (or non-existence) of any such audits is relevant to his claim that BNSF engaged in mismanagement violative of Montana Code Annotated § 39-2-703.  (Doc. 57 at 10–11.)  Additionally, Mr. Voelker asserts that the request for production at issue could reveal documents illustrating BNSF's inconsistent application of employee conduct regulations, thus further supporting his claims involving mismanagement and disparate treatment.  (*Id.*)  Ultimately, however, the Court finds the request so confusing and overly broad as to warrant summary

denial.  A careful reading of the request fails to reveal precisely what Mr. Voelker seeks.  **The Court denies Mr. Voelker's motion to compel a response to his fourteenth request for production.**

### B.    EPTS, TSS, and LINQS.

Mr. Voelker's quest for information regarding BNSF's EPTS, TSS, and LINQS invokes three separate discovery requests.  (Doc. 57 at 11–15.)  First, Mr. Voelker's second interrogatory states:

> Please identify the person(s)-including name(s), address(es), and current position(s) with BNSF-with the most knowledge of BNSF's TSS System including how LINQ reports are made, who LINQ reports have been sent to in the past five years, whether or not LINQ reports have been sent by BNSF employees to persons outside of BNSF at any time in the last five years, and the capabilities of BNSF to audit management or employee dissemination of LINQ information and/or LINQ reports to persons inside or outside of BNSF.

(Doc. 57-2 at 3.)  BNSF has responded by stating:

> BNSF objects to this interrogatory on the grounds that it is irrelevant and not proportional to the needs of the case. The issues identified by the Plaintiff upon which he wishes the designated individual to testify fall far outside anything relevant or proportional to Plaintiffs act of disseminating information taken from the TSS system to a third party without authorization, including how LINQ reports are made and to whom they have been provided in the past. BNSF also objects to this request on the grounds that it is overbroad and unduly burdensome, as it would require any individual identified by BNSF to inquire with every BNSF employee as to whom they have ever sent a LINQ report and whether any of those individuals were third party individuals or employees of BNSF. BNSF is not required under the rules of discovery to task any individual with obtaining this knowledge, to the extent it is even possible to obtain the same, for the sole purpose of responding to this request.

10

(*Id.* at 3–4.)  Second, Mr. Voelker's fourth interrogatory states:

> Please identify by name, address, and position of employment the
> BNSF person(s) with most knowledge of the criteria for designating
> records, information, and/or documents including LINQ reports or
> information similar to that produced at YJB-VOELKER (WB) - 57-63
> as confidential from 2015 to present.

(*Id.* at 5.)  BNSF's response states:

> BNSF objects to this request on the grounds that it is overly broad and
> vague with regard to "information similar" to that which was
> produced by Plaintiff. In BNSF's estimation, a LINQ report is unique
> and there is no other similar document in existence. BNSF may be in a
> better position to respond to this request if Plaintiff can clarify what
> he means by "similar." BNSF further objects to this request on the
> grounds that it is not relevant or proportional to the needs the needs
> (sic) of the case. The relevant issue in this case is not whether the
> LINQ report is or has ever been designated as "confidential," but
> whether Plaintiff wrongfully disseminated information from BNSF's
> TSS system to a third party without authorization.

(*Id.* at 5–6.)  Finally, Mr. Voelker's thirteenth request for production states:

> Produce any documents maintained or available to BNSF through the
> Employee Performance Tracking System and/or any other database or
> repository maintained by BNSF designed to ensure that rules and
> discipline are consistent and uniform across BNSF as such documents
> relate to any rule that BNSF alleges was violated by Plaintiff in regard
> to the investigation and/or any discipline stemming therefrom.

(*Id.* at 27.)  BNSF responded by stating:

> As this request relates to the specific allegations contained in
> Plaintiffs complaint, BNSF responds as follows: Other than reviewing
> the investigation transcript, exhibits and discipline history, Ms.
> Detlefson and Mr. Gabriel relied on their own experience and
> knowledge to interpret the applicable rules and to ensure uniformity
> with respect to the recommendation and decision to dismiss Plaintiff

in April 2017. See investigation transcripts at BNSF1012; investigation exhibits at BNSF 1013; Plaintiffs employee transcript at BNSF 1007; and PEPA Policy at BNSF 1036.

BNSF objects to this request to the extent it seeks information that is not relevant or proportional to Plaintiffs claims. The ultimate question with regard to this issue is whether similarly situated individuals received similar discipline, not whether there exists some non-specific documents designed to ensure consistency. BNSF further objects to this request on the grounds that it seeks confidential and/or proprietary information. BNSF also objects to this request on the grounds that it is overly broad and unduly burdensome to the extent it seeks information for an unspecified time period, and is not limited to geographic location or rules applicable to Plaintiffs job as a conductor/switchman.

BNSF further objects to this request on the grounds that it is overly broad, unduly burdensome and not relevant to the claims or defenses in this case as it is not limited to the locations, decision makers or time periods pertinent to this case.

BNSF further objects to the extent these requests call for confidential employee discipline information for persons not a party to this litigation.

Finally, BNSF objects as this request seeks information protected by the attorney client privilege and work product doctrine.
Finally, BNSF objects that this request is overly broad and unduly burdensome to the extent that it seeks information from "any other database or repository." As an initial matter, EPTS was implemented in mid-2011. As such, BNSF cannot produce information from EPTS for dates prior to mid-2011. The burden of such a search of predecessor databases or repositories would outweigh any likely benefit given the scope of this request.

Upon request, Defendant is willing to meet and confer regarding its response to this document demand.

(*Id.* at 27–28.)  The Court will grant Mr. Voelker's request to compel responses to these discovery requests.

As a starting point, the Court notes that it has already concluded that Mr. Voelker is entitled to "understand how BNSF compiles, stores, and produces electronic information that is or may be discoverable in this case."  (Doc. 45 at 9–10.)   As such, Mr. Voelker's second and fourth interrogatories are both relevant and proportional to the needs of the case and it will grant his motion to compel responses to these requests.  BNSF's objections are unpersuasive.  Notably, with respect to the second interrogatory, BNSF represents that it "can identify a witness to discuss LINQ, how reports are made, and their general use."  (Doc. 62 at 8.)  **It is ordered that BNSF must make this identification in addition to the identification of any other individuals who possess the information enumerated in Mr. Voelker's second interrogatory.   As to the fourth interrogatory, it is ordered that BNSF must provide the requested information, namely the identity of the person or persons who possesses the most information regarding confidential classifications in the LINQ system.**

Mr. Voelker's thirteenth request for production is difficult to track.  The Court construes this request as seeking documents contained in BNSF's internal systems that serve to ensure uniform application of the employment rules BNSF maintains Mr. Voelker violated.  Such a request is analogous to that propounded in

*Jones* and for which the Court compelled a response. *Jones*, 2019 WL 6728429 at

*8. Seemingly recognizing this, BNSF maintains that it is has responded to this

request through a supplemental discovery response. (Docs. 62 at 11; 57-2 at 121–

22.) This supplemental response, however, appears geared towards "employees

disciplined for violating the same rules as Plaintiff from January 1, 2016, to present

on a systemwide basis." This is not the information Mr. Voelker requests.

As such, the Court will grant Mr. Voelker's motion to compel a response to

his thirteenth request for production. **It is ordered that BNSF shall produce any**

**and all documents contained within BNSF's internal systems designed to**

**ensure uniform application of the rules BNSF maintains Mr. Voelker violated.**

If BNSF does not possess any responsive documents, then it should respond as

such.

### C.   BNSF's Management Compensation and Bonus Structure.

Only a single discovery request is implicated by Mr. Voelker's attempts to

gather information on BNSF's management compensation and bonus structure.

(Doc. 57 at 20–23.) This request—Mr. Voelker's thirty-first request for

production—states:

> Produce copies of all documents reflecting the Mid-Year and End-
> Year Performance and Development (PMP) Reviews and ratings for
> William Reed, James Pino, Dan Fransen, Rick Stauffer, Rico Mantini,
> Rance Randle, Benjamin Marx, Stephanie Detlefson, Brent Hills,
> and/or Jon Gabriel from the years of 2012-present.

14

(Doc. 57-2 at 47.)  BNSF's response states:

> BNSF objects to this request as the PMP's, goals and ratings of BNSF's management employees are not relevant to any claim or defense in this case and this request is harassing. Moreover, this request violates employees' right to privacy and is overly broad in time period. It also seeks information concerning individuals that played no role in the termination of Plaintiffs employment.
>
> BNSF asserts as privileged and confidential any PMP or other documentation responsive to this request that contains personal and confidential information of persons not a party to this matter.

(*Id.* at 47–48.)  In resolving this discovery issue, the Court walks on well-trodden ground.  *See Jones*, 2019 WL 6728429 at *5–6.

Here, as in *Jones*, the Court finds the information Mr. Voelker seeks both relevant and proportional to the needs of the case.  The confidentiality objections raised by BNSF have previously been overruled by this Court as "simply . . . not the sort of sensitive personal information giving rise to a valid objection to discovery." *Id.* at *6.  But this does not mean the Court will compel a response to Mr. Voelker's request as currently written.  Instead, the Court finds that some slight narrowing of Mr. Voelker's request is necessary.

First, BNSF represents that Brent Hills and William Reed played absolutely no role in the events giving rise to this case.  (Doc. 62 at 13.)  The Court will take BNSF at its word and it need not produce the information sought with respect to those two employees.  Second, Mr. Voelker's request is unduly broad with respect to time.  Recognizing this, Mr. Voelker has expressed a willingness to narrow his

15

request to the period of 2014 to 2018.  (Doc. 57 at 21.)  Because the events giving rise to this lawsuit allegedly arose in 2015 the Court finds 2014 to 2018 a sufficiently narrow window.

Accordingly, the Court will grant Mr. Voelker's motion to compel a response to his thirty-first request for production to the extent it seeks the specified PMP reviews and ratings for James Pino, Dan Fransen, Rick Stauffer, Rico Mantini, Rance Randle, Benjamin Marx, Stephanie Detlefson, and/or Jon Gabriel from the years of 2014-2018.  **It is ordered that BNSF shall respond this production, as modified by the Court, to the extent it has not already.  (*See* Doc. 62 at 12–13.) Additionally, such information may be produced subject to a protective order as has previously been done in this case.  (*Id.* at 12.)**

### D.    BNSF's PEPA Policy and PEPA Review Board.

This category of discovery implicates three requests.  First, Mr. Voelker's eighteenth request for production states:

> Please provide copies of all training materials, general and specific guidelines, PowerPoint presentations, slides, memos, documents, provided to William Reed, James Pino, Dan Fransen, Rick Stauffer, Rico Montini, Rance Randle, Benjamin Marx, Stephanie Detlefson, Brent Hills, Jon Gabriel, and/or other BNSF officers and managers regarding BNSF's PEPA policy, BNSF discipline procedures, how to conduct a BNSF disciplinary investigation, how to interpret GCOR or BNSF rules, how to determine whether discipline should or should not be assessed for various rule violations and under what fact circumstances BNSF officers or managers may use their discretion in deciding whether or not to hold a disciplinary investigation of an individual and if discipline may be warranted whether or not

16

discretion may be exercised by BNSF officers or managers to reduce discipline or not discipline an employee at all.

(Doc. 57-2 at 34–35.)  BNSF's lengthy response states:

> BNSF believes the PEPA policy and pertinent collective bargaining agreements set forth how to determine whether discipline should or should not be assessed for various rule violations. See applicable PEPA policy produced at BNSF1036 and collective bargaining agreement previously produced at BNSF1016.

> To the extent this request seeks additional materials, BNSF responds as follows: Inasmuch as BNSF is a railroad operating over more than 33,500 route miles in 28 states and three Canadian provinces and employs more than 42,000 people this request is overly broad in scope of Rule 26(b)(l) as it seeks training materials for all "BNSF officers and managers" and is not limited in time period. It is further overly broad, vague and does not comply with the "reasonable particularity" requirement of Rule 34(b)(l)(A), F.R.Civ.P., is not reasonably tailored to time period or content that is relevant to a claim or defense in this case, and is not proportional and is unreasonable considering the needs of this case and the importance in resolving the issues. BNSF also objects to this request for training materials to conduct investigations on the grounds it seeks confidential and proprietary information.

> BNSF objects to producing documents on "how to interpret GCOR or BNSF rules" as vague, lacks any proportionality to the facts of this case and is not limited to the rule that Plaintiff violated.

> BNSF objects to this request on the grounds that it seeks documents protected by the attorney-client privilege. Pursuant to Rule 26(b)(5), F.R.Civ.P., BNSF asserts as privileged and confidential all training materials prepared and presented by counsel and/or providing legal advice.

> BNSF further objects to this request on the grounds that it is overly broad with regard to scope. This (sic) focus of this case is on BNSF's motivation for terminating Plaintiff, not on whether Plaintiff received administrative or contractual due process. Additionally, it is irrelevant

whether or not the management officials who investigated Plaintiff were properly trained in conducting an investigation. If Plaintiff is challenging the sufficiency of the investigation, that remedy is to file a claim under the RLA, not the FRSA.

The burden of such a search for training records for the employees would outweigh any likely benefit as this would likely yield hundreds of irrelevant documents given the scope of this request. With regard to this case, BNSF objects to producing "all training materials, general and specific guidelines, PowerPoint presentations, slides, memos, documents" for an unspecified date range on the grounds that it is overly broad and not proportional to the needs of this case as required Rule 26(b), F.R.Civ.P.  Additionally, as applied to the facts of this case, the request for training on how to conduct a BNSF disciplinary hearing and assessing discipline are irrelevant to Rick Stauffer, William Reed, Clark Simmons, James Pino, Ricco Montini, or Brian Sheffield, as they did not have any involvement in those matters. Dan Fransen, Rance Randle and Stephanie Detlefson were not involved with conducting the investigation. With regard to any training materials provided to Benjamin Marx on conducting investigations, BNSF objects as conducting officer training is irrelevant to the question of whether BNSF dismissed Plaintiff as a result of retaliation and not whether Plaintiff received administrative or contractual due process. Plaintiff does not allege improper training of investigation officers as an "adverse employment action." Furthermore, any training information on conducting investigations is proprietary information and BNSF objects to producing the same.

(*Id.* at 35–37.)  Second, Mr. Voelker's twenty-fourth request for production states:

Produce a copy of all BNSF policies, manuals, guidance, and/or procedures (and dates of changes or revision) related to discipline-including but not limited to the Policy for Employee Performance Accountability ("PEPA Policy")-that may have applied to Plaintiff and the March 2017 investigation, as well as all revision history for such policies from 2009 to the present.

(*Id.* at 41.)  BNSF responds by stating:

18

BNSF believes the following documents are responsive to this request: BNSF PEPA Policy produced herewith at Exhibit BNSF1036 and the CBA previously produced at 1016. To the extent this request seeks "revision history from 2010 to present," BNSF objects on the grounds that it seeks irrelevant PEPA policies that were not in effect or applicable to the events at issue in this case and is overly broad in time period by seeking documents for over nine years.

(*Id.*)  Finally, Mr. Voelker's eleventh interrogatory states:

Identify every BNSF employee, official, and/or officer who participated in the PEPA Board review of the railroad's termination of either Plaintiff or Zachary Wooten and give those individuals names, addresses, and positions at time of each PEPA Board meeting, what information they reviewed, what comments, if any, they made, and how they voted with regard to each case.

(*Id.* at 13–14.)  BNSF's response states:

As this request relates to the allegations in Plaintiffs complaint, BNSF responds as follows: Stephanie Detlefson prepared the PEPA Summary produced herewith at BNSF1027. This matter was put on the PEPA Board's docket several months after Plaintiffs dismissal. Ms. Detlefson was present at the meeting but does not recall anyone who was in attendance, nor the substance of any discussion or any questions that may have been asked with regard to Plaintiffs discipline.

To the extent Plaintiff is seeking additional information, BNSF objects to this request as not proportional to the needs of this case. BNSF further objects to this request on the grounds that it is irrelevant to the claims and defenses in this case. The PEPA Board played no part in BNSF's decision to terminate Plaintiff, and has never been involved in a decision to terminate a BNSF employee.

To the extent that Plaintiff is seeking discovery from *Wooten v. BNSF Ry. Co.*, BNSF objects as it is improper, irrelevant and not proportional to the claims and defenses in this matter. It is further harassing and improperly designed to increase the costs of this litigation.

(*Id.* at 14.)  The Court finds Mr. Voelker has received what he is entitled to with respect to his eighteenth and twenty-fourth request for productions but will compel a response to his eleventh interrogatory.

The Court finds Mr. Voelker's eighteenth request for production confusing and overly broad.  The Court interprets this request to, in essence, seek any materials provided to BNSF employees regarding how to conduct an internal disciplinary investigation.  BNSF represents that it has produced all information responsive to this request.  (Docs. 62 at 14; 57-2 at 34–37.)  Mr. Voelker does not address this contention in his reply brief.  (*See generally* Doc. 69.)  As such, the Court concludes that there is nothing further to compel.  **Mr. Voelker's motion to compel a response to his eighteenth request for production will be denied.**

The Court reaches the same conclusion with respect to Mr. Voelker's twenty-fourth request for production.  Specifically, BNSF states that it has produced all documents responsive to this request.  (Doc. 62 at 15–16.)  Mr. Voelker again does not contest this assertion in his reply brief.  (Doc. 69.)  In short, the Court finds there is nothing further to compel.  **Thus, Mr. Voelker's motion to compel a response to this twenty-fourth request for production will be denied.**

With respect to Mr. Voelker's eleventh interrogatory, BNSF has again appeared to provide all information responsive to this request.  (Doc. 62 at 16.)  **Accordingly, it is ordered that BNSF shall ensure it has provided Mr. Voelker**

**with all information responsive to his eleventh interrogatory and supplement**

**its response as necessary.**

### E.   Daniel Fransen.

The discovery issues surrounding Daniel Fransen implicate a single

request—his forty-eighth request for production—which states:

> Produce any separation/severance agreements and/or covenants that
> BNSF entered into with Dan Fransen, or any other individual involved
> in the investigation and/or termination of Plaintiff, as well as any
> person identified in discovery in this litigation by either party.

(Doc. 57-2 at 62.)  BNSF's response states:

> BNSF objects to this request on the grounds that it seeks personal and
> confidential information about persons not a party to this action and is
> harassing. Additionally, Dan Fransen specifically invoked his right to
> privacy and is not a witness or decisionmaker in this case. This is
> irrelevant and improper discovery only sent to harass BNSF and Mr.
> Fransen. BNSF asserts as privileged and confidential any agreements
> or other documentation responsive to this request that contains
> personal and confidential information of persons not a party to this
> matter.

(*Id.*)  The Court finds that this request seeks relevant information but is too broad

for the Court to grant Mr. Voelker's motion to compel, as currently written.

It appears that BNSF has produced all responsive information related to Mr.

Fransen and the Court finds that there is nothing further to compel in that respect.

(Doc. 62 at 17.)  To the extent Mr. Voelker's request seeks the production of

separation agreements entered into between BNSF and "any other individual

involved in the investigation and/or termination of Plaintiff, as well as any person

identified in discovery in this litigation by either party," it is overly broad.  As

such, Mr. Voelker shall identify specific individuals for which he seeks such

information.  BNSF shall then level objections and produce any responsive

documents.  **In short, the Court will grant Mr. Voelker's motion to compel**

**responses to his forty-eighth request for production, but only to the extent he**

**provides BNSF with the names of specific individuals as he has done for Mr.**

**Fransen.**

### F.    Miscellaneous Requests.

The Court must address two final requests that do not neatly fit in the

foregoing categories.  First, in Mr. Voelker's twelfth request for production, he

states:

> Please provide copies of all BNSF's rules interpretations, rules
> guidance, or other communication available to any officer,
> management official, or employee of BNSF interpreting, analyzing,
> discussing, or providing information on each and every rule that
> BNSF claims Plaintiff violated relating to this litigation.

(Doc. 57-2 at 25.)  BNSF's response states:

> See GCOR 1.6 Conduct; GCOR 1.13 Reporting and Complying with
> Instructions; and GCOR 1.27 Divulging Information and Corporate
> Policy and Rule on Confidential Information previously produced at
> BNSF1013.
>
> To the extent this request seeks additional materials of "any"
> employee and BNSF employs over 42,000 people, BNSF objects to
> this request on the grounds that this request is unintelligible, and to
> the extent it can be understood it is overly broad and unduly
> burdensome as it seeks documents for an unspecified time period,

from unnamed and unspecified "officer, management official, or employee," and contains no appropriate temporal limitation to employees who played a role in the decision to investigate or dismiss Plaintiff. Furthermore, there is no evidence that any employee sought a rule interpretation, guidance or other communication of any rule that was violated by Complaint (sic). BNSF is not obligated to search for or produce any documents related to "all BNSF's rules, interpretations, rules guidance, or other communication, as this request seeks "everything else' production without any attempt to appropriately narrow these types of requests, preventing any type of meaningful response. BNSF further objects to this request on the grounds that it is vague with regard to the phrase "other communication."

BNSF also objects to this request on the grounds that it is irrelevant to any of the issues in this case and does not comply with the "reasonable particularity" requirement of Rule 34(b)(l)(A), F.R.Civ.P., is not reasonably tailored to time period or content that is relevant to a claim or defense in this case, is not proportional and is unreasonable considering the needs of this case and the importance in resolving the issues.

Upon request, Defendant is willing to meet and confer regarding its response to this document demand in the event Plaintiff believes he can specifically identify any additional materials he is seeking.

(*Id.* at 25–26.)  Additionally, Mr. Voelker's fiftieth request for production states:

Provide for inspection in native format a copy of all memoranda, documents, records, information, ESI, notes, photographs, and/or other information related to the claims or defenses of any party in this matter found in any of the following databases and/or non-custodial sources of ESI:

a.   IBM File Network Space

b.   Transportation Support System

c.   Shared R Drive

  d.  Safety Issue Resolution Process

  e.  Shared Drive containing Rule Books

  f.  Higher Ground

  g.  SAP

  h.  Express

  i.  Labor Relations Claims Management System

  j.  Best Way System Dashboard Terminal Reports

  k.  Data Warehouse Dashboard Data

(*Id.* at 64.)  BNSF responded by stating:

> BNSF objects to this request as overly broad, unduly burdensome, irrelevant, and not proportional to the needs of the case as it demands the search of numerous ill-defined "databases," without any regard to whether any discoverable information is reasonably likely to be found there, and without any consideration of the burden in doing so.

> BNSF objects to this request on the grounds that the term "other information related to the claims or defenses of any party in this matter" is vague and overly broad and not in compliance with the "reasonable particularity" requirement of Rule 34(b)(l)(A), F.R.Civ.P. It is further not reasonably tailored to time period or content that is relevant to a claim or defense in this case. This request would require BNSF to search for documents over an unspecified date range and encompasses databases that are irrelevant to the facts of this case. The burden of such a search would outweigh any likely benefit given the scope of this request. Finally, BNSF is not obligated to search for or produce any documents related to "all memoranda, documents, notes, photographs, and/or other information related to the claims or defenses of any party" as this request seeks "everything else" production and without any attempt to appropriately narrow these types of requests, prevents any type of meaningful response. It also seeks impermissible discovery on discovery.

> BNSF has performed a reasonable search of sources that are likely to contain discoverable information, and has produced responsive, non-privileged, nonobjectionable documents. BNSF is best situated to evaluate procedures, methodologies and technologies appropriate for reserving and producing their own electronically stored information.

(*Id.* at 64–66.)  The Court finds that, although relevant, there is nothing further to compel with respect to the twelfth request for production.  Additionally, the Court will compel a response to the fiftieth request for production subject to alignment with the search terms attached to an identical request in *Jones.*

Request for production twelve is relevant and proportional to the needs of the case.  This Court previously held as much in *Jones*, where it stated "[h]ow BNSF decisionmakers interpreted the rules is relevant to whether Jones would have been disciplined and/or terminated had he not engaged in protected activity . . . [a]nd official guidance on rules interpretation is probative of the decisionmaker's interpretation."  2019 WL 6728429 at *8.  But, this does not mean the Court can compel BNSF to produce what does not exist.  BNSF produced responsive documents in its original request and later supplemented its response to indicate that additional efforts to uncover additional responsive documents proved unfruitful.  (Doc. 57-2 at 25, 109–10.)  The Court finds that BNSF has fully complied with the request and there is nothing further to compel.  **As such, the Court denied Mr. Voelker's motion to compel a response to his twelfth request for production.**

25

Mr. Voelker's fiftieth request for production is nearly identical to that at issue in *Jones*. Critical to resolution of that specific discovery dispute, however, was the identification of search terms to be applied to the identified databases. *Jones*, 2019 WL 6728429 at *10. There, the Court found that BNSF "must search the identified databases for ten search terms of Jones's choosing." *Id.* Because Mr. Voelker has not provided any search terms to be applied to the databases identified in the request at issue, the Court will do what it did in *Jones*, and order BNSF to search them for ten search terms of his choosing. **Thus, the Court grants Mr. Voelker's request to compel a response to his fiftieth request for production subject to the identification of ten search terms of his choosing.**

### G.   Designation of Proper Deponents.

The final issue stemming from Mr. Voelker's first motion to compel involves BNSF's refusal to designate Rule 30(b)(6) deponents on various topics. (*See generally* Doc. 57 at 35–39.) These topics include: (1) basic ESI; (2) ten custodial data sources likely to have discoverable information; (3) non-custodial data sources likely to have discoverable information; (4) BNSF's organizational policies and procedures governing ESI; and (5) BNSF's ESI data repositories containing communications related to Voelker's termination. (*Id.*) Ultimately, the Court finds that Mr. Voelker is entitled to a deponent designation on all of the foregoing topics and will grant his motion to compel on this issue.

26

Rule 30 permits a litigant to serve a notice of deposition on a corporation if they "describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). Once this occurs, the corporation "must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf." *Id.* BNSF has failed to comply with the requirements of Rule 30.

Topic one seeks:

a proper deponent who is capable of testifying regarding how BNSF compiles, stores, and produces electronic information that is or may be discoverable in this case, including BNSF hardware, software and reporting capabilities, methods, processes and protocols for searching, identifying, recovering, reporting and production of ESI that could be relevant to claims or defenses in this litigation, and the relative costs of doing so.

(Doc. 57-3 at 2.) Topic one invokes issues relevant to this case and, as noted above, the Court has previously held Mr. Voelker is entitled to "understand how BNSF compiles, stores, and produces electronic information that is or may be discoverable in this case." (Doc. 45 at 9–10.) BNSF has apparently "agreed to this request in part" but nonetheless failed to make the required designation. (Doc. 57 at 31.) BNSF maintains that the request is "well beyond what is relevant, reasonable or proportional to this case." (Doc. 62 at 18.) The Court disagrees.

As such, the Court will grant Mr. Voelker's motion to compel the designation of a deponent by BNSF in response to topic one. **It is ordered that**

## **BNSF must designate a person or persons that can testify regarding the compilation, storage, and production of electronic information discoverable in this case.**

Topics two and three can be addressed together.  Topic two seeks:

> a proper deponent who is capable of testifying regarding the ten
> custodial data sources must likely to have discoverable information,
> including the custodian who has such data sources in their possession,
> custody, or control, from the most likely to the least likely, including
> their title, name, role in the instant dispute, and the subject matters of
> the information.

(Doc. 57-3 at 2.)  Topic three seeks:

> a proper deponent who is capable of providing a list of non-custodial
> data sources that are most likely to contain non-duplicative
> discoverable information related to the parties' claims and defenses in
> this litigation for preservation and production, from the most likely to
> the lease likely.

(*Id.* at 3.)  The Court will grant Mr. Voelker's motion to compel the designation of a deponent or deponents on both issues, consistent with this Court's prior orders in *Brewer*.

In *Brewer*, the Court ordered BNSF to disclose "[t]he 10 custodians most likely to have discoverable information in their possession, custody or control, from the most likely to the least likely" and "[a] list of non-custodial data sources that are most likely to contain non-duplicative discoverable information for preservation and production consideration, from most likely to the least likely." *Brewer v. BNSF Ry. Co.*, 2 (D. Mont. February 10, 2015) (CV 14-65-BMM-JTJ).

The Court finds that the second and third topics are relevant and proportional to the needs of the case. The existence (or non-existence) of relevant documents within electronic storage systems pervade the discovery issues brought before the Court in cases such as this, including both *Jones* and *Brewer*. Indeed, as noted above, in *Brewer*, the Court required initial disclosures of the information for which Mr. Voelker now seeks deponent designations. In response to these requests, BNSF has stated that "BNSF cannot guess what information" Mr. Voelker seeks. (Doc. 62 at 19.) But the Court finds that BNSF need not guess what information Mr. Voelker seeks, it only needs to read the two requests outlined above.

**It is ordered that BNSF shall designate a proper deponent or deponents who can testify regarding "the ten custodial data sources most likely to have discoverable information" in this case and "who is capable of providing a list of non-custodial data sources that are most likely to contain non-duplicative discoverable information."**

Topic four seeks:

a proper deponent who is capable of testifying regarding BNSF's organizational policies and procedures that govern ESI including data identification, storage, search parameters and terms, and policies and procedures related to, data retention policies, archiving, and recovery of deleted data or ESI

(Doc. 57-3 at 3.)  BNSF, citing to *Brewer*, characterizes this request as

impermissible meta-discovery.  (Doc. 62 at 20.)  But this is not the case.

Unlike the request at issue in *Brewer*, which directly sought discovery on

what BNSF had done to "preserve, search for, and produce relevant ESI" in that

specific case, the request at issue here seeks a proper deponent that is capable of

generally discussing BNSF's handling of ESI.  2018 WL 1756432, *9–12 (D.

Mont. Jan. 11, 2018).  Mr. Voelker does not seek a deponent on how BNSF has

applied its organizational policies governing ESI in this specific litigation.  As

such, his request does not seek to conduct meta-discovery.

Therefore, the Court will grant Mr. Voelker's motion to compel the

designation of a deponent on this issue.  **It is ordered that BNSF shall designate**

**a proper deponent or deponents who can testify regarding the information**

**identified in the fourth topic.**

Finally, topic six seeks:

a proper deponent who is capable of testifying regarding BNSF's ESI
repositories, files, and or databases that contain or once contained
communication(s) between or among BNSF management regarding
Voelker, potential disciplinary investigation of Voelker and reasons
supporting or opposing such disciplinary investigation, Labor
Relations involvement in such decisions, operating departments
involvement in such decisions, including whether any such ESI,
including text messages, emails, voicemail, memoranda, or other
communications may have been deleted, modified, or altered and
methods, programs or software that could search for or recover such
ESI data/communications.

(Doc. 57-3 at 4.)  BNSF again argues that this request impermissibly seeks meta-discovery.  (Doc. 62 at 21.)  BNSF also contends that the request "is nearly impossible to follow."  (*Id.*)

Importantly, as previously noted, this Court has already concluded that Mr. Voelker is entitled to "understand how BNSF compiles, stores, and produces electronic information that is or may be discoverable in this case."  (Doc. 45 at 9–10.)  This request seeks to do just that.  Specifically, the Court reads Mr. Voelker's request as seeking the designation of a proper deponent or deponents who can testify regarding the internal BNSF systems that may contain information regarding Mr. Voelker's termination.

The Court agrees that the latter portion of the request certainly tows the line between permissible discovery and the more disfavored meta-discovery.  However, the designation of a deponent who can testify regarding whether data in the systems at issue has been "deleted, modified, or altered" and correspondingly whether such data can be restored to its original condition is sufficiently related to the rest of the request to justify compulsion.  Indeed, given that an FRSA claim can be proven through circumstantial evidence, such an inquiry may very well reveal crucial evidence.  Additionally, because BNSF will have to produce a deponent for the rest of the request, additional designations related to the deletion, modification, or alteration of information in such systems is unlikely to impose an undue burden

31

or increase the expense associated with the discovery process.  As such, the Court will grant Mr. Voelker's motion to compel a response to his sixth topic.  **It is ordered that BNSF shall designate a proper deponent or deponents capable of testifying as to the information enumerated in the sixth topic.**

### H.     Requested Relief on First Motion to Compel (Doc. 56).

Besides compulsion of responses to the requests identified in his first motion to compel (Doc. 56), Mr. Voelker requests a variety of other relief including: (1) an award of attorneys' fees and costs; (2) the appointment of a special master at BNSF's expense; (3) an order directing counsel to prepare a joint statement and discovery plan on remaining ESI issues and depositions; and (4) an order continuing trial and discovery deadlines to accommodate additional depositions. (Doc. 57 at 39–42.)  The Court finds that the requested relief is either improper or has already been addressed.

First, the Court finds an award of attorneys' fees and costs improper.  Under Rule 37, if upon a motion to compel, the Court finds for the moving party it "must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  Fed. R. Civ. P. 37 (a)(5)(A).  Such an award need not be ordered if "the opposing party's nondisclosure, response, or objection was

substantially justified [or] other circumstances make an award of expenses unjust."
Fed. R. Civ. P. 37(a)(5)(A)(ii)–(iii).

Here, the Court finds an award of attorneys' fees and costs to be unjust.  As
outlined above, the Court did not grant Mr. Voelker's motion in full.  Instead, the
Court concluded that in some instances Mr. Voelker was entitled to an additional
response and in other instances BNSF had fully complied with its discovery
obligations.  Accordingly, the Court finds it would be unjust to issue an award of
attorneys' fees or costs.  Additionally, as noted above, BNSF's refusal to respond
to certain requests was substantially justified.  Finally, as stated in previous orders,
the Court trusts that counsel will continue to "discern a pattern and consistency in
how judges in this district view" the discovery issues raised in *Brewer, Wooten,
Jones*, and now this case.  *Jones*, 2019 WL 6728429 at * 11.

Second, the Court finds the appointment of a special master unnecessary.
While the Federal Rules of Civil Procedure have liberalized the use of special
masters, such use "is expensive and frequently leads to delay."  9C, Arthur R.
Miller, *Federal Practice and Procedure* § 2601, 528–29 (3d ed. 2005).  As such,
referral to a special master remains appropriate only in the rarest of cases.  *Id.*  The
Court finds this is not the special case in which the utilization of a special master is
warranted.

33

Third, the Court concludes that the preparation of a joint statement and discovery plan is not appropriate at this time.  The Court trusts that counsel will continue to work together to resolve discovery issues, utilizing motions practice only as a last resort when all other efforts to reach an agreement on the issue have failed.

Finally, the Court has already addressed the postponement of deadlines in this case.  The parties have both filed motions with the Court expressing concern regarding the impending deadlines in this case.  (Docs. 73–74.)  In response, the Court vacated the motions deadline and held a status conference.  (Docs. 75; 89.)  At the status conference, the Court advised the parties that following the adjudication of all outstanding discovery motions (Docs. 56; 58; 81; 83; 85; 87) a new motions deadline would be set.  Additionally, the Court stated that it did not intend to vacate the trial setting and that the parties are free to extend the discovery deadline on their own.  (*See* Doc. 20 at 2–3.)

## II.    Mr. Voelker's Second Motion to Compel (Doc. 58).

In his second motion to compel, Mr. Voelker seeks the production of various emails produced by BNSF in redacted form.  (*See generally* Doc. 59.)  BNSF maintains that such redacted emails are protected by the attorney-client privilege and/or the work product doctrine.  (*See generally* Doc. 63.)  Mr. Voelker requests that the Court compel production of the emails or alternatively conduct an *in*

34

*camera* review.  (Doc. 59 at 2.)  BNSF does not object to an *in camera* review.
(Doc. 63 at 1–2.)

Accordingly, the Court will conduct an *in camera* review of the redacted
emails produced by BNSF in this case.  (Doc. 59-4.)  BNSF shall produce
unredacted copies of the emails on or before October 30, 2020, by filing them
under seal pursuant to Local Rule 5.2.  Leave of the Court to file under seal is not
required.  The Court reserves ruling on Mr. Voelker's second motion to compel
(Doc. 58) until after it has reviewed unredacted copies of the emails.

Accordingly, IT IS ORDERED that Mr. Voelker's first motion to compel
(Doc. 56) is GRANTED in part and DENIED in part, as set forth previously in this
Order.

IT IS FURTHER ORDERED that, with respect to Mr. Voelker's second
motion to compel (Doc. 58), BNSF shall produce unredacted copies of the emails
produced by it in this case (Doc. 59-4) for *in camera* review on or before October
30, 2020.

DATED this 20th day of October, 2020.

Dana L. Christensen, District Judge
United States District Court