IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| MARK VOELKER,<br><br>                    Plaintiff,<br><br>     vs.<br><br>BNSF RAILWAY COMPANY, a<br>Delaware corporation,<br><br>                    Defendant. | CV 18–172–M–DLC<br><br><br>ORDER |

Before the Court is Defendant BNSF Railway Company's Motion for Judgment on the Pleadings.  (Doc. 65.)  BNSF seeks judgment on the pleadings as to Plaintiff Mark Voelker's third cause of action.  (*Id.*)  Specifically, BNSF contends that the statute giving rise to this cause of action, Montana Code Annotated § 39-2-703(1), violates the Equal Protection Clauses of the United States and Montana Constitutions.  (Doc. 66 at 9.)  For the reasons stated herein, the Court concludes the statute at issue does not offend the constitutional provisions invoked by BNSF.

**PROCEDURAL HISTORY**

Mr. Voelker asserts claims against BNSF for: (1) violation of the Federal Rail Safety Act, codified at 49 U.S.C. § 20109(b); (2) violation of 45 U.S.C. § 60;

1

(3) violation of Montana Code Annotated § 39-2-703; (4) negligent infliction of emotional distress; and (5) intentional infliction of emotional distress. (Doc. 8.) On September 14, 2020, BNSF moved for judgment on the pleadings arguing that Montana Code Annotated § 39-2-703 contravenes the equal protection provisions of the Montana and United States Constitutions. (Doc. 65.) Pursuant to Federal Rule Civil Procedure 5.1(a) and 28 U.S.C. § 2403, the Court issued a certification to the Montana Attorney General that a challenge to the constitutionality of Montana Code Annotated § 39-2-703 had been advanced. (Doc. 68.)

Per this certification, the Montana Attorney General was provided 60 days for which to intervene in this action for the purposes of defending the constitutionality of Montana Code Annotated § 39-2-703. (*Id.* at 2.) As of the date of this Order, the Montana Attorney General has not intervened. Under Rule 5.1, however, this Court "may reject the constitutional challenge" before the window of intervention has expired. Fed. R. Civ. P. 5.1(c). As discussed below, the Court finds Montana Code Annotated § 39-2-703(1) comports with the equal protection clauses of both the Montana and United States Constitutions and will thus enter this Order prior to the expiration of the time established for intervention.

## STANDARD

The Federal Rules of Civil Procedure authorize a motion for judgment on the pleadings. Fed. R. Civ. P. 12(c). The Rule 12(c) analysis is "substantially identical

to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (internal citations and quotation marks omitted). A motion for judgment on the pleadings should only be entered if "there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). Important for purposes of this Order, Rule 12(c) is a proper vehicle for advancing constitutional challenges. *See, e.g., Johnson v. Dodson Public Schools, Dist. No. 2-A(C)*, 463 F. Supp. 2d 1151 (D. Mont. 2006) (CV 05–39–GF–CSO).

## ANALYSIS

Both the Montana and United States Constitutions guarantee persons equal protection of the laws. U.S. Const., amend. XIV, § 1; Mont. Const. Art. II, § 4. Most laws, however, "differentiate in some fashion between classes of persons" without offense to the guarantee of equal protection. *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). Accordingly, these clauses do not "mean that a State may not draw lines that treat one class of individuals or entities differently from the others." *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 359 (1973). Indeed, long ago, the United States Supreme Court made clear that the "equal protection of the

laws does not mean that all occupations . . . must be treated in the same way." *Dominion Hotel v. Arizona*, 249 U.S. 265, 268 (1919).

Instead, the guarantee of equal protection of the laws "simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordlinger*, 505 U.S. at 10. Unless a suspect classification is at issue or a fundamental right implicated, "legislation is presumed to be valid" and prior cases instruct that in the realm of "social or economic legislation," the mandate of equal protection affords "the States wide latitude." *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 440 (1985) (noting that "the Constitution presumes that even improvident decisions will eventually be rectified by the democratic processes").

Regardless of whether an equal protection challenge is advanced under the Montana or United States Constitution, the Court's task is the same. In both instances, the Court proceeds by: (1) identifying the classifications drawn by the challenged statute and determining whether they are similarly situated; (2) selecting the appropriate level of scrutiny; and (3) applying the appropriate level of scrutiny. *Gallinger v. Becerra*, 898 F.3d 1012, 1016 (9th Cir. 2018); *see also Snetsinger v. Montana Univ. Sys.*, 104 P.3d 445, 449–50 (Mont. 2004). But, this does not mean the analysis under both constitutions will always result in the same outcome. On the contrary, this Court is mindful that the equal protection

component of the Montana Constitution "provides even more individual protection than the Equal Protection Clause in the Fourteenth Amendment . . . ." *Snetsinger*, 104 P.3d at 449. As such, in certain cases, a Court may find offense to the equal protection clause of the Montana Constitution without finding similar offense to the United States Constitution.

    Before undertaking the foregoing analysis, the Court notes that legislative enactments arrive before it "clothed with a presumption of constitutionality, and the burden is on the" challenging party to establish a contrary conclusion. *Miller v. United States*, 73 F.3d 878, 881 (9th Cir. 1995); *see also Nordlinger*, 505 U.S. at 10 ("legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality"). This burden becomes especially heavy when a party invokes the protections of the Montana Constitution, because such violations must be established beyond a reasonable doubt. *See, e.g., Rasmussen v. Best Buy Stores, LP*, 2008 WL 11414596, *2 (D. Mont. 2008) (CV 06–159–BLG–RFG); *see also Walters v. Flathead Concrete Prods., Inc.*, 249 P.3d 913, 921 (Mont. 2011) (noting the aforementioned principle and adding "[i]f there is any doubt as to constitutionality, the resolution must be made in favor of the statute"). As outlined below, BNSF has failed to meet its burden.

BNSF challenges the constitutionality of Montana Code Annotated § 39-2-703(1), which provides:

> A person or corporation operating a railway or railroad in this state is liable for all damages sustained by any employee of the person or corporation in consequence of the neglect of any other employee of the person or corporation or by the mismanagement of any other employee and in consequence of the willful wrongs, whether of commission or omission, of any other employee of the person or corporation when the neglect, mismanagement, or wrongs are in any manner connected with the use and operation of a railway or railroad on or about which the employee is employed. A contract that restricts the liability is not legal or binding.

It is well established that under this statute, a railroad can be "held liable for mismanagement in the handling of an employee termination." *Haux v. Montana Rail Link, Inc.*, 97 P.3d 540, 545 (Mont. 2004) (citing *Winslow v. Montana Rail Link*, 16 P.3d 992, 996 (Mont. 2000)). Critical to BNSF's argument, however, is that no other employers are subjected to such claims under Montana law. *See Heltborg v. Modern Mach.*, 795 P.2d 954, 961 (Mont. 1990); *see also Kittelson v. Archie Cochrane Motors, Inc.*, 813 P.2d 424, 426 (Mont. 1991). According to BNSF, it "is precisely this type of arbitrary and discriminatory state action the Equal Protection Clauses" prohibit. (Doc. 66 at 6–7.) The Court disagrees.

## I.  Classification.

As noted above, the "first step in equal protection analysis is to identify the state's classification of groups." *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1063 (9th Cir. 2014). In order to sustain an equal protection claim, the

groups "must be comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166–67 (9th Cir. 2005). Importantly, "[a]n equal protection claim will not lie by conflating all persons not injured into a preferred class receiving better treatment than the plaintiff." *Id.* at 167 (internal citations and quotation marks omitted). If the groups are not similarly situated with respect to the statute at issue, an equal protection claim fails. *Fraley v. U.S. Bureau of Prisons*, 1 F.3d 924, 926 (9th Cir. 1993).

BNSF frames the challenged statute's classification of groups as "railroad employers and non-railroad employers." (Doc. 66 at 9.) Mr. Voelker counters that railroad employers are not similarly situated to other employers and thus there is no proper classification by which the statute can be subjected to an equal protection challenge. (Doc. 79 at 7–8.) This Court tends to agree with Mr. Voelker. Specifically, the Court finds that classifying the group as railroad employers and non-railroad employers is inappropriate, because those two groups are not similarly situated in all relevant respects so as to implicate the promise of equal protection.

Long ago the Supreme Court, when addressing a statute nearly identical to that at issue here, held that "when legislation applies to particular bodies or associations, imposing upon them additional liabilities, it is not open to the

objection that it denies to them the equal protection of the laws, if all persons brought under its influence are treated alike under the same conditions." *Missouri Pac. Ry. Co. v. Mackey*, 127 U.S. 205, 209 (1888). Here, the statute at issue treats all railway or railroad operators the same. Additionally, it stretches the imagination to conclude that railroad employers and non-railroad employers are similar in all relevant respects so as to properly subject their disparate treatment to an equal protection challenge. *See Id.* at 210 (stating "the hazardous character of the business of operating a railway would seem to call for special legislation with respect to railroad corporations, having for its object the protection of their employes (sic) as well as the safety of the public").

It should come as no surprise to BNSF that the operation of a railroad is a unique undertaking for which special legislation has often been targeted. *See, e.g.,* Mont. Code Ann. § 69-14-252 (requiring railroad companies to timely file accident reports with the State); *see also* 45 U.S.C. § 51 (subjecting railroad companies to liability for injuries sustained by employees on the job). Given the unique circumstances attendant to railroad operation, this Court agrees with Mr. Voelker that it cannot be stated BNSF, a railroad employer, is similarly situated in all relevant respects to non-railroad employers, such as "retail stores, law firms, or a myriad of other industries." (Doc. 79 at 7.)

Ultimately, however, the Court finds that it need not conclusively resolve the question, because even taking BNSF's proposed classification—railroad employers and non-railroad employers—the Court finds that the statute at issue does not run afoul of the appropriate level of scrutiny. *Country Classic Dairies, Inc. v. Montana Dep't. of Commerce Milk Control Bureau*, 847 F.2d 593, 596 (9th Cir. 1988) (finding it unnecessary to decide whether a "proposed classification is appropriate" when the state action at issue clearly survives the applicable level of scrutiny); *see also English v. BNSF Ry. Co.*, 2020 WL 6149552, *2 (D. Mont. Oct. 20, 2020) (CV 18–77–GF–BMM). As such, the Court turns to the question of the applicable level of scrutiny.

## II. Identifying the Applicable Level of Scrutiny.

Even though there is only one Equal Protection Clause in both the United States and Montana Constitutions, courts deploy differing standards of review depending on the situation because the promise of equal protection "must coexist with the practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons." *Romer v. Evans*, 517 U.S. 620, 631 (1996). As such, under the United States Constitution, unless the statute at issue implicates a fundamental right or proceeds along suspect lines, it need only survive rational basis review. *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993).

Under the Montana Constitution, strict scrutiny applies when "a suspect class or fundamental right is affected," middle-tier scrutiny applies "if the law or policy affects a right conferred by the Montana Constitution, but is not found in the Constitution's Declaration of Rights," and rational basis review applies when "neither strict scrutiny nor middle-tier scrutiny apply." *Snetsinger*, 104 P.3d at 154. Given the circumstances of this case, the Court finds that rational basis review is the appropriate level of scrutiny by which to adjudge the constitutionality of Montana Code Annotated § 39-2-703(1) under both the Montana and United States Constitutions.

BNSF concedes that rational basis review governs its equal protection claim. (Doc. 66 at 18.) Similarly, Mr. Voelker urges this Court to undertake a rational basis review. (Doc. 79 at 4.) The Court finds that the parties' have correctly identified the appropriate level of review. Specifically, rational basis review applies because Montana Code Annotated § 39-2-703(1) does not divide upon suspect lines or implicate a fundamental right, nor does it implicate a right protected by the Montana Constitution but found outside of its Declaration of Rights. *See generally* Mont. Const. Art. II. As such, rational basis review is required, and the Court turns to the question of whether the statute at issue is rationally related to legitimate state interests.

### III. Applying the Applicable Level of Scrutiny.

Rational basis review is exceedingly deferential. *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314 (1993 (characterizing it as "a paradigm of judicial restraint"). Under it, the statute at issue will survive an equal protection challenge if "there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Heller*, 509 U.S. at 320; *see also Davis v. Union*, 937 P.2d 27, 32 (Mont. 1997). Importantly, because only rational basis review applies, the Montana Legislature, in passing Montana Code Annotated § 39-2-703(1) "need not actually articulate at any time the purpose or rationale supporting" the classifications drawn by the statute. *Heller*, 509 U.S. at 320; *see also F.C.C.*, 508 U.S. at 315 (holding "the absence of legislative facts . . . has no significance in rational-basis" review).

Additionally, as noted above, statutes subject to rational basis review are presumed constitutional. *Heller*, 509 U.S. at 320. As such, BNSF, as the challenging party, bears the burden of negating "every conceivable basis" which might support the classifications between railroad employers and non-railroad employers in the statute at issue. *Heller*, 509 U.S. at 321. Finally, and critical to the resolution of this case, the Montana Legislature was not, "in attempting to deal with the safety problems in one industry, required to investigate the various differing hazards encountered in all competing industries and then to enact

11

additional legislation to meet these distinct problems." *Brotherhood of Locomotive Firemen and Enginemen v. Chicago, Rock Island & Pac. R.R. Co.*, 393 U.S. 129, 143 (1968).

Here, the Court has no trouble concluding that Montana Code Annotated § 39-2-703(1) survives rational basis review. The Court can easily attribute the statute's classification between railroad employers and non-railroad employers to the need to ensure that railroad employees injured by the negligence of their employer are adequately compensated. As previously discussed, legislation targeted at the railroad industry and designed to alleviate the numerous safety issues attendant to the profession is nothing new. *Mackey*, 127 U.S. at 210 (noting "the hazardous character of the business of operating a railway would seem to call for special legislation with respect to railroad corporations, having for its object the protection of their employes (sic) as well as the safety of the public").

BNSF's argument that the guarantee of equal protection is offended because other industries that are equally or more dangerous do not fall within the scope of the statute is unavailing. As noted above, the Montana Legislature was not required to address the safety issues in one industry when attempting to alleviate the safety issues of another. *Brotherhood*, 393 U.S. at 143. Indeed, BNSF's argument would render numerous statutory schemes passed to the benefit of railroad workers (or the member of any specific profession) unconstitutional as

12

offensive to the guarantee of equal protection.  But this is not what the Equal Protection Clauses of the Montana or United States Constitutions require.

This conclusion is buttressed by the fact that this Court is forbidden from sitting "as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines."  *Merrifield v. Lockyer*, 547 F.3d 978, 989 (2008).  Additionally, given the economic and social nature of the statute at issue, this Court "defers to legislative determinations as to the desirability of particular statutory discriminations" and recognizes the wide latitude the guarantee of equal protection affords Montana in these areas.  *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976).

In sum, the Court concludes that BNSF has not met its burden of establishing that Montana Code Annotated § 39-2-703(1) contravenes the equal protection guarantees of the Montana and United State Constitutions.  In so holding, this Court reaches an outcome identical to that reached previously when presented with precisely the same issue.  *English*, 2020 WL 6149552, at *2.

Accordingly, IT IS ORDERED that the BNSF's Motion for Judgment on the Pleadings (Doc. 65) is DENIED.

The Clerk of Court shall provide a copy of this Order to the Montana Attorney General.

DATED this 26th day of October, 2020.

_____
Dana L. Christensen, District Judge
United States District Court