IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| MARK VOELKER,<br><br>                      Plaintiff,<br><br>  vs.<br><br>BNSF RAILWAY COMPANY, a<br>Delaware corporation,<br><br>                      Defendant. | CV 18–172–M–DLC<br><br><br>ORDER |

Before the Court is Plaintiff Mark Voelker's Third Motion to Compel (Doc. 87) and Motion for Order to Show Cause (Doc. 111). The Court adjudicates the remaining issues associated with each motion in turn.

## I.  Mr. Voelker's Third Motion to Compel (Doc. 87).

This Court previously adjudicated all outstanding issues raised in Mr. Voelker's Third Motion to Compel other than whether any outlines provided to Mr. Marx are protected by the work product doctrine. (Doc. 109 at 28.) The Court ordered BNSF to file such outlines under seal for *in camera* review. (*Id.*) BNSF produced such outlines on November 23, 2020. (Doc. 114.) Having reviewed such outlines, the Court concludes they are not protected by the work product doctrine, and, accordingly, must be produced.

1

This Court has already articulated its interpretation of the work product doctrine but finds it necessary to reiterate it here.  (Doc. 109 at 5–6.)  Under the Federal Rules of Civil Procedure, the work product doctrine protects "documents and tangible things that are prepared in anticipation of litigation or for trial or for another party or its representative" from disclosure during the discovery process.  Fed. R. Civ. P. 26(b)(3).  The Ninth Circuit applies a two-part test, in which documents are afforded work product protection if they were prepared: (1) in anticipation of litigation or for trial; and (2) by or for another party or by or for that party's attorney.  *In re Grand Jury Subpoena*, 357 F.3d 900, 907 (9th Cir. 2004).  This doctrine remains subject to several limiting principles.

Specifically, the work product doctrine does not protect documents generated in the ordinary course of business.  Fed. R. Civ. P. 26(b)(3) Advisory Committee's Note (stating "Materials assembled in the ordinary course of business . . . are not under the qualified immunity provided by" the work product doctrine).  As such, "[i]t is well established that documents prepared in the ordinary course of business are not protected by the work-product doctrine because they would have been created regardless of the litigation."  *Heath v. F/V ZOLOTOI*, 221 F.R.D. 545, 549–50 (W.D. Wash. 2004).  The Court finds that the outlines at issue fall squarely within this exception to the work product doctrine.

BNSF's only argument in favor of the work product doctrine's application to the outlines in question is that they were prepared by its in-house counsel, Andrea Hyatt. (Doc. 98 at 20–22.) But, as noted above, this is not enough to afford them work product protection. Instead, the outlines must have been prepared in anticipation of litigation or for trial, and not simply in the ordinary course of BNSF's business. It is clear the documents at issue here were prepared for the internal investigation of Mr. Voelker conducted by BNSF in 2017. (*Id.* at 21–22.) More precisely, the investigative outlines produced by BNSF *in camera* were not prepared in anticipation of litigation over Mr. Voelker's termination, but rather to facilitate witness interviews during its internal investigation of his allegedly improper conduct. This is fatal to BNSF's claim of work product protection.

The Court is not persuaded that BNSF would not have generated these outlines but for the existence or threat of litigation. Instead, the Court is convinced that BNSF created such outlines in order to further its internal investigation into Mr. Voelker's conduct. Such outlines would likely have been generated regardless of whether litigation regarding Mr. Voelker's conduct ensued. As such, the documents are properly characterized as having been generated by BNSF in the ordinary course of its business and not solely for the purposes of preparing for eventual litigation. **Accordingly, BNSF shall produce the outlines in question (Docs. 114-1–114-3) within three days of this Order.**

## II. Mr. Voelker's Motion for Order to Show Cause (Doc. 111).

Having adjudicated the only outstanding discovery issue, the Court turns its attention to the issue of discovery sanctions. On November 18, 2020, Mr. Voelker filed his Motion for Order to Show Cause (Doc. 111) contending that BNSF had failed to comply with this Court's prior Order (Doc. 92) by refusing to make designated 30(b)(6) deponents available for depositions and otherwise produce responsive material. (Doc. 112 at 2–5.) As a sanction, Mr. Voelker requested that this Court enter default judgment against BNSF. (*Id.* at 9.) In response, this Court ordered BNSF to show cause as to why it should not be sanctioned. (Doc. 113.) Having reviewed BNSF's responsive filings (Docs. 115–117), the Court finds the issuance of sanctions unwarranted.

If a party fails to obey an order of this Court authorizing certain discovery, the Federal Rules of Civil Procedure authorizes the issuance of "further just orders." Fed. R. Civ. P. 37(b)(2)(A). Such recourse includes, but is not limited to, the following:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;

4

    (iv)    staying further proceedings until the order is obeyed;

    (v)    dismissing the action or proceeding in whole or in part;

    (vi)    rendering a default judgment against the disobedient party; or

    (vii)    treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

*Id.* Default judgment is an inappropriate sanction unless there is evidence of "willfulness, bad faith, or fault" on the part of the party being sanctioned. *Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003).

    The evidence submitted by BNSF establishes that its delayed designation of 30(b)(6) deponents is the result of a good-faith effort on its part to identify and prepare individuals capable of testifying on the relevant topics. (Docs. 116 at 2–4; 117 at 2.) Put another way, the Court does not find such delay to be the product of willfulness, bad faith, or fault on BNSF's behalf. This renders the sanction of default judgment, and any other sanction, improper. The Court further finds that its extension of impending deadlines in this matter should alleviate any prejudice occasioned on Mr. Voelker by virtue of BNSF's delayed fulfillment of its discovery obligations. (Doc. 118.)

    With respect to Mr. Voelker's assertion that BNSF has failed to produce responsive documents as required by this Court's prior Order, the Court finds nothing in the record indicating that is the case. On the contrary, it appears BNSF has, in good faith, supplemented its prior responses and produced any documents

within its possession. (Doc. 117-2.) In sum, the Court finds no sanctionable conduct on the part of BNSF and it declines to impose any sanction in response to Mr. Voelker's motion.

Accordingly, IT IS ORDERED that the unadjudicated portion of Mr. Voelker's Third Motion to Compel (Doc. 87) is GRANTED.

IT IS FURTHER ORDERED that Mr. Voelker's request for a sanction of default judgment or any other sanction (Doc. 111) is DENIED.

DATED this 30th day of November, 2020.

_____
Dana L. Christensen, District Judge
United States District Court